**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail:  yeremey@skclassactions.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLY RAMIREZ and SORANGIE SANCHEZ, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>S. MARTINELLI & COMPANY,<br><br>        Defendant. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Joly Ramirez and Sorangie Sanchez ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendant S. Martinelli & Company ("Martinelli's" or "Defendant"), for the false and misleading advertising of its Martinelli's brand apple juice, sparkling blush, and sparkling cider products.

<u>**INTRODUCTION**</u>

1.      This class action aims to hold Martinelli's responsible for misleadingly marketing its Martinelli's Apple Juice, Martinelli's Sparkling Cider, and Martinelli's Sparkling Blush products (collectively, the "Products"[1]). The Products are all marketed as "100% Juice" despite containing an added preservative or other additives. The labeling is not only false and misleading, but also violates a host of California and other state's regulations.

2.      Martinelli's is a household name that brands itself premium juice. Every Product at issue prominently displays the purported fact that the Product is "100% Juice" on the Products' front labels. For instance, the ubiquitous Martinelli's Apple Juice displayed below states, "Premium 100% Juice Not From Concentrate" on the front label in bright red lettering against a contrasting white background. *See* **Exhibit 1** for exemplars of all Product labels.



3.      As another example, Martinelli's Sparkling Cider contains the following "100% Juice" claim on the front label:

---

[1] Products includes all Products sold by Martinelli's that are advertised as "100% Juice" on the front labels of the Products but that contain non-juice ingredients such as ascorbic acid or other additives listed as "natural flavors." The Products include Martinelli's Sparkling Cider, Apple Juice, Organic Apple Juice (in 64 fl. oz. and larger sizes), Sparkling Blush, Sparkling Rose, Heritage Label Sparkling Cider, Classic Heritage Label Sparkling Cider, Organic Heritage Sparkling Cider, Sparkling Apple Juice, Sparkling Pear Cider, Sparkling Peach Cider, Sparkling Apple-Mango.

100% JUICE FROM U.S. GROWN FRESH APPLES

4.      For many, many years, Martinelli's paired these statements with the phrase "no additives of any kind" on the front label.  And that statement was true, at the time. Martinelli's became known as a "premium" 100% juice brand that sought to differentiate itself from many other juice brands in grocery stores by not adding any additives to its juice products. However, a few years ago, Martinelli's quietly removed the statement "no additives of any kind" from its products' labels while visually otherwise keeping the labels virtually identical to ensure that consumers would not see that statement removed. And, just as quietly, Martinelli's started adding preservatives and other additives to its Products while continuing to represent to consumers that the Products are "100% Juice." These added preservatives and ingredients are not mentioned or disclosed anywhere on the Products' front labels, but are instead buried in fine print only on the Products' *back* labels in the ingredient list. Reasonable consumers, however, have no reason to look at the Products' back labels to parse the ingredient lists: after all, the Products are listed as "100% Juice" on the front labels. The Apple Juice is advertised as "Premium 100% Juice Not From Concentrate," reinforcing the impression that nothing was added to the juice and that it did not undergo significant processing. Consumers have no reason to think that a Product depicted as "100% Juice" without any disclaimer or asterisk would have anything other than "100% Juice" disclosed on the back label. Why would any reasonable consumer believe that, for example, 100% Juice Apple Juice that is not from concentrate has anything other than 100% Apple Juice? They would not.

5.      The table below shows the undisclosed added non-juice ingredients in the Products, each of which is prominently labeled as "100% Juice" on the Products' front labels:

| Product Name | Non Juice Ingredients |
| --- | --- |
| Sparkling Cider | Ascorbic Acid |
| Apple Juice | Ascorbic Acid |
| Organic Apple Juice | Ascorbic Acid |
| Sparkling Blush | Ascorbic Acid |
| Sparkling Rose | Ascorbic Acid |

| | |
|---|---|
| Heritage Label Sparkling Cider | Ascorbic Acid |
| Classic Heritage Label Sparkling Cider | Ascorbic Acid |
| Organic Heritage Sparkling Cider | Ascorbic Acid |
| Organic Sparkling Cider | Ascorbic Acid |
| Sparkling Apple Juice | Ascorbic Acid |
| Organic Sparkling Apple Juice | Ascorbic Acid |
| Sparkling Pear Cider | "natural flavors" |
| Sparkling Peach Cider | "natural flavors" |
| Sparkling Apple-Mango | "natural flavors" |

6.    Defendant intentionally designed the front labels of the Products so that consumers come away with the impression that the Products contain only 100% Juice, and nothing else. Defendant did so because consumers place great value and are willing to pay more for juice products that they believe are 100% juice and contain no additives.

7.    The 100% Juice category of beverages is a massive industry, accounting for almost $10 billion in sales in 2024 in the United States. Consumers are attracted to juices labeled as "100% Juice" for their purported health benefits, and because consumers associate products that are as minimally processed as possible to be superior. Industry insiders have commented that consumers value "100% Juice" products for their simplicity: "There's just less thinking involved – consumers don't have to overanalyze the ingredients or wonder what else is in there … They know what they're getting and can get in and out of stores, which can be sensory nightmares."[2] Furthermore, consumers also seek out not from concentrate 100% juices specifically because they are seeking additive and preservative free options, believing that they are healthier and taste better.[3] Here, Defendant reaped the benefits of consumers and Plaintiffs' perception of the Products as literally only 100% Juice, but sold inferior products that contained preservatives or other added non-juice ingredients.

---

[2] Lauren Sabetha, *Innovation Keeps Juice, Juice Drinks Fresh*, Beverage Industry, November 21, 2024 (available at https://www.bevindustry.com/articles/97094-innovation-keeps-juice-juice-drinks-market-fresh).

[3] https://www.grandviewresearch.com/industry-analysis/nfc-juice-market-report#:~:text=The%20NFC%20juice%20market%20in%20the%20U.S.%20is%20facing%20intense,desire%20for%20a%20healthier%20lifestyle.

8.      The Products are also misbranded and misleading under relevant state regulations for juice products labeled as 100% juice.  For instance, California's Sherman Food, Drug, and Cosmetic Law and New York's Agriculture and Markets Law adopt FDA regulations for food and beverages as the laws of those states, such that a violation of any FDA regulation concerning food or beverages also violates the respective state law.  Cal. Health & Safety Code § 110100(a); 1 CRR-NY 259.1. In turn, the FDA has the following rule with respect to products labeled as "100% Juice":

> If the beverage contains 100 percent juice and also contains non-juice ingredients that do not result in a diminution of the juice soluble solids or, in the case of expressed juice, in a change in the volume, when the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added _____," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener"), except that when the presence of the non-juice ingredient(s) is declared as a part of the statement of identity of the product, this phrase need not accompany the 100 percent juice declaration.

21 C.F.R. § 101.30(b)(3)

9.      Defendant's Products do not follow this rule. Each of the Products has a prominent "100 Juice" statement on the front label, but is not accompanied by the phrase "with added ingredients," or "with added preservatives," as is required by California, New York, and the associated federal regulations.

10.      The FDA also provides the juice industry with relevant guidance.  The FDA's Guidance for Industry A Food Labeling Guide[4]  provides the following questions and answers on the subject:

> **J23. I have a 100% juice drink and add a non juice ingredient. May I still call it 100% juice?**
>
> **Answer:** If the added ingredient does not dilute the juice or, for an expressed juice, change its volume, you may continue to call it 100% juice but the percent juice statement must identify the added

---

[4] Available at https://www.fda.gov/files/food/published/Food-Labeling-Guide-%28PDF%29.pdf

ingredient, e.g., "100% juice with added preservative." 21 CFR 101.30(b)(3) and 101.54(e)

**J.24. What if the added substance is also a nutrient such as Vitamin C (ascorbic acid)?**

**Answer:** If ascorbic acid is added at levels consistent with fortification of the juice, a declaration as part of the percent juice statement would constitute a nutrient content claim which would trigger compliance with more claims including the required accompanying information. If it were added at the level used as a preservative, then a statement such as 100% juice with preservative could be used. In this case it would be listed in the ingredient statement as a preservative in accordance with 101.22(j).

11.    Here, each of the Products contain ascorbic acid (Vitamin C) as a preservative or "natural flavors." And yet, Defendant does not add the statement "with added preservative" on the Products' front label to modify the claim to make it non misleading and compliant with the relevant state and federal regulations. On its website, Defendant states that "vitamin C [is] added to maintain color" on a product page for its Sparkling Blush product, which, like the other Products, is advertised as "100% Juice" without an identification of the preservative or added ingredients on the front label.[5] Similarly, a description of its Sparkling Cider product states that "Vitamin C [is] added to maintain color."[6] In other words, ascorbic acid is not added to fortify the beverages with Vitamin C, but to "maintain color" – *i.e.*, to act as a preservative. In effect, Defendant baits its consumers by promising 100% Juice, but providing a product that in fact contains a preservative despite a duty to disclose the preservative under directly on point state and federal regulations.

12.    Under 21 C.F.R. § 101.22(c), "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices,

---

[5] https://www.martinellis.com/nutrition/sparkling-blush-10-fl-oz/

[6] https://www.martinellis.com/nutrition/sparkling-cider/

substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5).  Here, in the context of the overall label, and given the instructions of 21 C.F.R. § 101.30(b)(3) to disclose preservatives on the front label of the Products, disclosing the presence of the preservatives here only in small print, *on the back of the Products' labels*, did not render the "statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."

13.    Plaintiffs bring this false advertising action on behalf of themselves and other purchased of the Products.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

15.    The Court has personal jurisdiction over Defendant because it is a California corporation with a principal place of address and headquarters in this District, located at 735 W Beach Street, Watsonville, CA 95076.

16.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District, and because Defendant has its principal place of address and headquarters in this District.

## PLAINTIFFS

17.    Plaintiff Joly Ramirez is an individual residing in San Bernardino, California. Plaintiff Ramirez may be referred to later in this complaint as a "California Plaintiff."  Within the past year (and many times in the years prior), Plaintiff Ramirez purchased the Products (including Martinelli's Apple Juice in half gallon size and Sparkling Cider in 750mL size) from multiple retail locations near her home in San Bernardino, California, such as Stater Brothers, AMPM, Food for Less, and a local liquor store.  Plaintiff's last purchase was in October 2024. Prior to her purchase of Products, Plaintiff Ramirez reviewed the Products' labeling and packaging and read

and relied on the Products' representations that they were "100% Juice." Specifically, the Marinelli's Apple Juice stated that it was "Premium 100% Juice Not From Concentrate," while the Martinelli's Sparkling Cider stated that it was "100% Juice from U.S. Grown Fresh Apples." Plaintiff Ramirez came away believing, based on the "100% Juice" representations, that the Products were composed solely of juice, and did not have any other added ingredients or preservatives. Plaintiff would not have bought the Products, or would not have bought them on the same terms, if she knew that those 100% Juice representations were false and misleading because the Products contain the preservative ascorbic acid.

18.     Plaintiff Sorangie Sanchez is an individual residing in the Bronx, New York. Plaintiff Sanchez may be referred to later in this complaint as a "New York Plaintiff." Within the past year (and many times in the years prior), Plaintiff Ramirez purchased the Products (including Martinelli's Apple Juice in half gallon size and Sparkling Cider in 750mL size) from multiple retail locations near her home in the Bronx, New York, such as Walmart, Dollar Tree, and a local deli. Plaintiff Sanchez's last purchase was around Christmas 2024, when she purchased Martinelli's Sparkling Cider. Prior to her purchase of Products, Plaintiff Sanchez reviewed the Products' labeling and packaging and read and relied on the Products' representations that they were "100% Juice." Specifically, the Marinelli's Apple Juice stated that it was "Premium 100% Juice Not From Concentrate," while the Martinelli's Sparkling Cider stated that it was "100% Juice from U.S. Grown Fresh Apples." Plaintiff Sanchez came away believing, based on the "100% Juice" representations, that the Products were composed solely of juice, and did not have any other added ingredients or preservatives. Plaintiff would not have bought the Products, or would not have bought them on the same terms, if she knew that those 100% Juice representations were false and misleading because the Products contain the preservative ascorbic acid.

19.    Each Plaintiff remains interested in purchasing the products at issue. However, they cannot know for certain whether the false labeling has been or will be corrected. The composition of the products may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiffs will be unable to make informed decisions about whether to purchase the subject Products. Plaintiffs are further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the product's marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

20.    Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

## DEFENDANT

21.    Defendant is a California corporation based in California. Defendant manufactures, advertises, distributes, and sells the subject Products nationwide, including in California and New York. Each of the subject Products includes Defendant's name on the label. Defendant is responsible for the labeling of the subject Products, and their formulation. The Products' labels, product packaging, and formulation were designed, conceived, and created in California. Further, the majority of apples for its Products are sourced from California. The Products are all pressed, pasteurized, and bottled in California.

## FACTUAL ALLEGATIONS

22.    **Products at Issue:** Defendant's Products that Defendant sells at retail to consumers nationwide. The Products include Martinelli's Sparkling Cider, Apple Juice, Organic Apple Juice (in 64 fl. oz. and larger sizes), Sparkling Blush, Sparkling Rose, Heritage Label Sparkling Cider, Classic Heritage Label Sparkling Cider, Organic Heritage Sparkling Cider, Sparkling Apple Juice, Sparkling Pear Cider, Sparkling Peach Cider, Sparkling Apple-Mango.

23.    **Relevant Time Period:**  The deceptive labeling and packaging at issue here was consistent during the last few years, at least.

24.    **Misrepresentations and Omissions at Issue:** the labeling of each of the Products states that the Products are "100% Juice."

25.    The front labels of the Products omit any mention of preservatives or non-juice additives in the Products, despite the Products containing ascorbic acid as a preservative or other added "natural flavors."

26.    **How/Why The Labeling Is Misleading:** Consumers are misled by the "100% Juice" representations because they are lead to believe that the Products only contain juice ingredients, and the front labels omit any reference to added preservatives or additional non-juice ingredients despite requirements under relevant FDA and state regulations.  Consumers place great value on the Products purportedly being 100% juice products, and are misled by the above misrepresentations and Defendant's omission of the fact that the Products contain multiple a preservative or other added non-juice ingredients.  The Products would have been worth substantially less to consumers had they known, and had Defendant disclosed on the Products' front labels, that the Products contain added preservatives or contain non-juice ingredients.

## CLASS ACTION ALLEGATIONS

27.    Plaintiffs bring this action on behalf of all people in the following classes and subclasses:

Nationwide class: all people in the United States who purchased a subject Product for personal or household use during the last four years.

California class: all people in California who purchased a subject Product for personal or household use during the last four years.

New York class: all people in New York who purchased a subject Product for personal or household use during the last four years.

<u>Multi-State Consumer Protection Class</u>: all people who purchased the Products for personal or household use (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state of Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

28.     Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

29.     Specifically excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

30.     ***Numerosity***.   Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, each Class or Subclass includes thousands of consumers.  The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery.  Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

31.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include, but are not limited to:

32.     Whether ascorbic acid is used in the Products as a preservative;

33.     Whether the Products contain non-juice ingredients;

34.     Whether the product packaging has the tendency or capacity to deceive or confuse a reasonable consumer;

35.     Whether Defendant intended to deceive consumers;

36.     Whether Defendant is liable to Plaintiffs and Class members under the causes of action alleged in this complaint;

37.     Whether the Products are misbranded under relevant state law; and

38.     Whether Plaintiffs and Class members are entitled to any of the forms of relief they seek in this action.

39.     *Typicality*.  The claims of the Plaintiffs are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

40.     *Adequacy*.    Plaintiffs will fairly and adequately protect the interests of Class members.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Plaintiffs have no interests that are antagonistic to those of the Class.

41.     *Superiority*.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

42.     Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

43.     Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

CLASS ACTION COMPLAINT

**FIRST CLAIM FOR RELIEF**
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

44.  Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

45.  The California Plaintiff brings this cause of action individually and on behalf of the Nationwide Class, the California subclass, and the Multi-State Consumer Protection Class.

46.  California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

47.  Defendant acted with knowledge and intent.

48.  The California Plaintiff alleges a claim under all three prongs of the UCL.

49.  As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

50.  Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

51.  The California Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws, the common law as set forth herein, and Cal. Health & Safety Code § 110100(a), as discussed above.

52.  As a direct and proximate result of Defendant's unfair, unlawful, and deceptive practices, Plaintiffs and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

53.  Plaintiffs and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not

equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

54.    Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

55.    The California Plaintiff seeks all relief available under the UCL.

## SECOND CLAIM FOR RELIEF

### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code §§ 17500, et seq.

56.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

57.    The California Plaintiff brings this cause of action individually and on behalf of the Nationwide Class, the California subclass, and the Multi-State Consumer Protection Class.

58.    Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by engaging in the conduct alleged above.

59.    Defendant knew or should have known that its conduct was false and/or misleading.

60.    Defendant knew or should have known that its conduct was false and/or misleading.

61.    Plaintiffs lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

62.    Plaintiffs and class members have suffered harm as a result of Defendant's violations of the FAL.

63.    The California Plaintiff seeks all available relief under the FAL.

### THIRD CLAIM FOR RELIEF

**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, et seq.**

64.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

65.    The California Plaintiff brings this cause of action individually and on behalf of the Nationwide Class, the California subclass, and the Multi-State Consumer Protection Class.

66.    Defendant is a "person" as defined by California Civil Code § 1761(c).

67.    Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

68.    For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

69.    Plaintiffs provided pre-suit notice of the claims asserted under the CLRA via certified mail, return receipt requested, in compliance with all of the CLRA's requirements.

70.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

71.    Defendant acted with knowledge and intent.

72.    As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

73.    With respect to the CLRA claim, Plaintiffs allege in the alternative that they lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

74.    As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

75.    California Plaintiff seeks all relief available under this cause of action, other than damages. Plaintiff may amend the Complaint in the future to add a damages claim.

-13-

CLASS ACTION COMPLAINT

## FOURTH CLAIM FOR RELIEF
### Violations of New York General Business Law § 349

76.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

77.     The New York Plaintiff brings this cause of action individually and on behalf of the New York subclass.

78.     GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

79.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 349.

80.     New York class members are consumers who purchased products from Defendant for their personal use.

81.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

82.     The foregoing deceptive acts and practices were directed at consumers.

83.     The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

84.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the New York class members have sustained from having paid for and used Defendant's Products.

85.     As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

86.     The New York Plaintiffs seek all available relief under GBL § 349.

**FIFTH CLAIM FOR RELIEF**

**Violations of New York General Business Law § 350**

87.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

88.     The New York Plaintiff brings this cause of action individually and on behalf of the New York subclass.

89.     GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to § 350, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

90.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 350.

91.     Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

92.     Plaintiff and the New York class members are consumers who purchased products from Defendant for their personal use.

93.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

94.     The foregoing deceptive acts and practices were directed at consumers.

95.     The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 350.

96.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the New York class members have sustained from having paid for and used Defendant's Products.

97.     As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

98.     The New York Plaintiffs seek all available relief under GBL § 350.

### <u>SIXTH CLAIM FOR RELIEF</u>

### Unjust Enrichment

99.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

100.    Each Plaintiff brings this cause of action individually and on behalf of the nationwide class and their respective state subclasses against Defendant.

101.    Each Plaintiff asserts this cause of action under the laws of California, or, in the alternative, the state where they are domiciled.

102.    To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

103.    Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

104.    Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

105.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product contained artificial preservatives.  This caused injuries to Plaintiffs and Members of the Classes because they would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

106.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Product to Plaintiffs and the Class Members.

107.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

108.    Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

109.    As a direct and proximate result of Defendant's actions, Plaintiffs and the Members of the Classes have suffered in an amount to be proven at trial.

110.    Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

111.    Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## SEVENTH CLAIM FOR RELIEF
### Fraud by Omission / Intentional Misrepresentation

112.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

113.    Each Plaintiff brings this cause of action individually and on behalf of the nationwide class and their respective state subclasses against Defendant.

114.    Each Plaintiff asserts this cause of action under the laws of California, or, in the alternative, the state where they are domiciled.

115.    This claim is based on fraudulent omissions concerning the preservatives and non-juice ingredients in the Products. The claim is also based on Defendant's misrepresentation of the Products as purportedly 100% juice products, despite the presence of preservatives and non-juice ingredients.

116.    The false and misleading omissions and misrepresentations were made with knowledge of their falsehood. Defendant knew the true nature of the Product and its ingredients. Nonetheless, Defendant continued to sell the Product using the false and misleading omissions and misrepresentations alleged herein to unsuspecting consumers.

117.    The false and misleading omissions and misrepresentations were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class Members to purchase the Product.

118.    The fraudulent actions of Defendant caused injury to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

119.    Plaintiffs seek all relief available under this cause of action.

## **PRAYER FOR RELIEF**

116.    **WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a)    For an order certifying the Classes and naming Plaintiffs as the representatives of the Class or Classes;

b)    For an order declaring Defendant's conduct violates the statutes referenced herein;

c)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d)    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e)    For prejudgment interest on all amounts awarded;

f)    For an order of restitution and all other forms of equitable monetary relief;

g)    For injunctive relief as pleaded or as the Court may deem proper; and

h)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: September 5, 2025                Respectfully submitted,

**SMITH KRIVOSHEY, PLLC**

By:___*/s/ Yeremey O. Krivoshey*_____
       Yeremey O. Krivoshey

Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street Suite 650 #1507

San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PLLC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiffs and the Putative Classes*

CLASS ACTION COMPLAINT

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Yeremey O. Krivoshey, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Smith Krivoshey, PC, counsel of record for Plaintiffs in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California  and the United States that the foregoing is true and correct and that this declaration was executed at Louisville, Kentucky this 5th day of September 2025.

*/s/ Yeremey O. Krivoshey*

Yeremey O. Krivoshey

CLASS ACTION COMPLAINT