BRUCE E. COPELAND (SBN: 124888)
bcopeland@nixonpeabody.com
LAUREN M. MICHALS (SBN: 184473)
lmichals@nixonpeabody.com
SEARA SULLIVAN (SBN: 303403)
ssullivan@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA  94111-3600
Tel:    415-984-8200
Fax:    415-984-8300

*Attorneys for Defendant*
S. MARTINELLI & COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLY RAMIREZ and SORANGIE SANCHEZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>S. MARTINELLI & COMPANY,<br><br>Defendant. | Case No.: 5:25-CV-07569-NC<br><br>**DEFENDANT S. MARTINELLI & COMPANY'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT AND STRIKE RELIEF AND CLASS CLAIMS**<br><br>**Hearing Date: February 4, 2026**<br>**Time: 11:00 am**<br><br>Complaint Filed: September 5, 2025<br>Trial Date: None Set |

-1-

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 11:00 a.m. on February 4, 2026, in the courtroom of the Honorable Nathanael M. Cousins, located at 280 South 1st Street, Courtroom 5, 4th Floor, San Jose, CA 95113, Defendant S. Martinelli & Company's ("Martinelli" or "Defendant") will and hereby does move this Court to dismiss Plaintiffs Joly Ramirez and Sorangie Sanchez's ("Plaintiffs") Amended Class Action Complaint [ECF No. 16] (the "Amended Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim, and to strike certain of the Amended Complaint's allegations pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D).

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and declaration submitted currently herewith, the records in this action, and such further evidence and argument that may be presented at the hearing of this Motion and that the Court may consider.

Dated:  December 15, 2025            NIXON PEABODY LLP

By: _____
Bruce E. Copeland
Lauren M. Michals
Seara Sullivan

*Attorneys for Defendant*
S. MARTINELLI & COMPANY

-2-

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 11

II.   RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY ............................. 12

III.  APPLICABLE LEGAL STANDARDS ................................................................. 16

    A.    Rule 12(b)(1) ........................................................................................ 16

    B.    Rule 12(b)(6) ........................................................................................ 16

IV.   ARGUMENT ................................................................................................... 17

    A.    Plaintiffs Lack Standing To Seek Relief For Products They
        Did Not Purchase ................................................................................ 17

    B.    Plaintiffs' Claims Fail As They Do Not Plausibly Allege
        Deception Under The Reasonable Consumer Standard ........................ 19

        1.    The entire label is relevant to evaluating the validity
            of Plaintiffs' claims and cures any ambiguity ............................ 23

        2.    Plaintiffs' allegations of regulatory violations are
            not on their own sufficient to support Plaintiffs'
            claims ........................................................................................ 25

    C.    Plaintiffs' Unjust Enrichment Claims Fail ........................................... 27

    D.    Plaintiffs' Express Warranty Claim Fails as a Matter
        of Law .................................................................................................. 28

    E.    Plaintiffs Have Not Sufficiently Alleged A Right To
        Equitable Relief ................................................................................... 29

    F.    Plaintiffs Lack Standing to Pursue Injunctive Relief ........................... 32

    G.    The Amended Complaint Does Not State Facts to
        Support a Claim for Punitive Damages ................................................ 33

V.    CONCLUSION ................................................................................................ 35

S. MARTINELLI & COMPANY'S MOTION TO DISMISS AMENDED CLASS ACTION
COMPLAINT AND STRIKE RELIEF AND CLASS CLAIMS; CASE NO.: 5:25-CV-07569-NC

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .................................................................................................. 16

*Aellis O. v. Connor*,
No. 22-cv-200 JLS (WVG), 2022 WL 2229421 (S.D. Cal. June 21, 2022) ........................... 27

*Allee v. Medrano*,
416 U.S. 802 (1974) .................................................................................................................. 17

*Andrade-Heymsfield v. Danone US, Inc.*,
No. 19-CV-589-CAB-WVG, 2019 WL 3817948 (S.D. Cal. Aug. 14, 2019) ......................... 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................. 16

*Ashour v. Arizona Beverages USA*,
Case 19 Civ 7081 (AT), 2025 WL 961682 (S.D.N.Y. Mar. 28, 2025) ...................... 27, 29, 32

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .................................................................................................... 27

*Babaian v. Dunkin' Brands Grp., Inc.*,
No. LACV 17-4890-VAP, 2018 WL 11445613 (C.D. Cal. June 12, 2018) ........................... 30

*Barreto v. Westbrae Nat., Inc.*,
518 F.Supp.3d 795 (S.D.N.Y. 2021) ................................................................................... 19, 26

*Bates v. United Parcel Service, Inc.*,
511 F.3d 974 (9th Cir. 2007) .................................................................................................... 32

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) .................................................................................................. 20

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025) ................................................................................................... 21

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016) ............................................................................................. 29

*Brownell v. Starbucks Coffee Co.*,
681 F.Supp.3d 27 (N.D.N.Y. 2023) .......................................................................................... 24

*Casey v. Odwalla, Inc.*,
338 F.Supp.3d 284 (S.D.N.Y. 2018) .................................................................................... 27, 33

*Chimienti v. Wendy's Int'l, LLC*,
   698 F.Supp.3d 549 (E.D.N.Y. 2023) ................................................................................. 26

*Chowning v. Kohl's Dep't Stores, Inc.*,
   733 F. App'x 404 (9th Cir. 2018) ................................................................................. 29, 31

*Cimoli v. Alacer Corp.*,
   564 F.Supp.3d 897 (N.D. Cal. 2021) ............................................................................ 28, 29

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ................................................................................................................ 32

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................................................. 33

*Colella v. Atkins Nutritionals, Inc.*,
   348 F.Supp.3d 120 (E.D.N.Y. 2018) .................................................................................. 30

*Cosgrove v. Oregon Chai, Inc.*,
   520 F.Supp.3d 562 (S.D.N.Y. 2021) .................................................................................. 29

*Doe 1 v. United Airlines, Inc.*,
   CV 20-05554-RSWL-AGRx, 2021 WL 4595766 (C.D. Cal. Apr. 22, 2021) ........................ 34

*Dumas v. Kipp*,
   90 F.3d 386 (9th Cir. 1996) ................................................................................................. 17

*ESG Capital Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) .............................................................................................. 27

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ............................................................................................ 20, 21

*Foster v. Whole Foods Mkt. Grp., Inc.*,
   No. 23-285-CV, 2023 WL 8520270 (2d Cir. Dec. 8, 2023) ................................................. 24

*Found. v. Napolitano*,
   No. 17-cv-02255-MMC, 2018 WL 1947766 (N.D. Cal. Apr. 25, 2018) .............................. 33

*Golikov v. Walmart, Inc.*,
   No. 2:24-cv-08211, 2025 WL 648532 (C.D. Cal. Feb. 27, 2025) ........................................ 26

*Guaranty Trust Co. of New York v. York*,
   326 U.S. 99 (1945) ................................................................................................................ 32

*Guzman v. Harris*,
   No. 16-CV-3499 (GBD) (RLE), 2017 WL 4386369 (S.D.N.Y. Sept. 29, 2017) .................. 33

*Hadley v. Kellogg Sales Co.*,
   243 F.Supp.3d 1074 (N.D. Cal. 2017) ............................................................................... 20

-5-

*Harris v. McDonald's Corp.*,
No. 20-CV-6533-RS, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2012)...................................... 21

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
No. 18-CV-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) .................................... 21

*Holve v. McCormick & Co. Inc.*,
334 F.Supp.3d 535 (W.D.N.Y. 2018) ..................................................................................... 17

*Husain v. Campbell Soup Co.*,
747 F.Supp.3d 1265 (N.D. Cal. 2024) ........................................................................ 16, 20, 24

*Jackson v. General Mills, Inc.*,
No. 18cv2634, 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020)................................................ 33

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*,
No. CV 17–01875–MWF, 2017 WL 4286577 (C.D. Cal. Sep. 20, 2017)............................... 21

*Jones v. Welch Foods Inc.*,
No. 19CV1532LDHVMS, 2020 WL 7024343 (E.D.N.Y. Nov. 30, 2020) ........................... 29

*Joslin v. Clif Bar & Co.*,
No. 4:18-cv-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .............................. 33

*Julian v. TTE Tech., Inc.*,
No. 20-cv-02857-EMC, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) .............................. 32

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)................................................................................................. 16

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020)............................................................................................ 31

*Kyszenia v. Ricoh USA, Inc.*,
583 F.Supp.3d 350 (E.D.N.Y. 2022) ...................................................................................... 19

*Lanovaz v. Twinings N. Am., Inc.*,
No. C-12-02646-RMW, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013) .................................. 17

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)................................................................................................... 16

*LeGrand v. Abbott Lab'ys*,
No. 22-CV-05815-TSH, 2023 WL 3510375 (N.D. Cal. May 16, 2023) ............................... 18

*Leonhart v. Nature's Path Foods, Inc.*,
2014 U.S. Dist. LEXIS 46413 (N.D. Cal. Mar. 31, 2014) ..................................................... 25

*Levitt v. Yelp! Inc.*,
765 F.3d 1126 (9th Cir. 2014).................................................................................................. 16

S. MARTINELLI & COMPANY'S MOTION TO DISMISS AMENDED CLASS ACTION
COMPLAINT AND STRIKE RELIEF AND CLASS CLAIMS; CASE NO.: 5:25-CV-07569-NC

*Martinez v. Mead Johnson & Co.*,
   No. 5:22-cv-00213, 2022 WL 15053334 (C.D. Cal. Oct. 22, 2022) ......................... 22, 23, 24

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023)................................................................................ 20, 23, 24

*Miller v. Ghirardelli Chocolate Co.*,
   912 F.Supp.2d 861 (N.D. Cal. 2012) ............................................................................. 17, 18

*Miller v. Philips N. Am. LLC*,
   No. 24-CV-03781-RFL, 2025 WL 582160 (N.D. Cal. Feb. 20, 2025).................................. 21

*Nacarino v. KSF Acquisition Corp.*,
   642 F.Supp.3d 1074 (N.D. Cal. 2022) ............................................................................... 28

*Naimi v. Starbucks Corp.*,
   798 F. App'x 67 (9th Cir. 2019) ........................................................................................ 30

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015).............................................................................................. 19

*Phillips v. Brooklyn Bedding LLC*,
   No. 23-cv-03781-RFL, 2024 WL 2830663 (N.D. Cal. Mar. 28, 2024).................................. 32

*Punian v. Gillette Co.*,
   No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ............................... 26

*Puri v. Costco Wholesale Corp.*,
   No. 5:21-CV-01202-EJD, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021).............................. 22

*Red v. Kraft Foods, Inc.*,
   No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)................................................ 22

*Rhynes v. Stryker Corp.*,
   No. 10-cv-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ................................ 32, 34

*Ringler v. J.M. Smucker Co.*,
   783 F.Supp.3d 1229 (C.D. Cal. 2025)................................................................................ 34

*Rodriguez v. Mondelez Global LLC*,
   703 F.Supp.3d 1191 (S.D. Cal. 2023), *reconsideration denied,* No. 23-CV-
   00057-DMS-AHG, 2024 WL 1361892 (S.D. Cal. Mar. 29, 2024) ........................... 19, 20, 23

*Roper v. Big Heart Pet Brands, Inc.*,
   510 F.Supp.3d 903 (E.D. Cal. 2020).............................................................................. 26, 33

*Salvestrini v. Gen. Motors, LLC*,
   No. 3:23-cv-1556, 2024 WL 3626695 (S.D. Cal. Aug. 1, 2024)......................................... 32

S. MARTINELLI & COMPANY'S MOTION TO DISMISS AMENDED CLASS ACTION
COMPLAINT AND STRIKE RELIEF AND CLASS CLAIMS; CASE NO.: 5:25-CV-07569-NC

*Sanchez v. Nurture, Inc.*,
  626 F.Supp.3d 1107 (N.D. Cal. 2022) ................................................................................. 17

*Sarr v. BEF Foods, Inc.*,
  No. 18CV6409ARRRLM, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) ..................... 20

*Schippell v. Johnson & Johnson Consumer Inc.*,
  No. EDCV23410JGBSHKX, 2023 WL 6178485 (C.D. Cal. Aug. 7, 2023) ......................... 30

*Serrano v. Campbell Soup Co.*,
  773 F.Supp.3d 127 (D.N.J. 2025) ................................................................................. 21, 25

*Shuman v. SquareTrade Inc.*,
  No. 20-CV-02725-JCS, 2021 WL 5113182 (N.D. Cal. Nov. 3, 2021).................................. 28

*Smith v. Apple, Inc.*,
  No. 21-CV-09527-HSG, 2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) ......................... 28, 33

*Somerville v. Medtronic, Inc.*,
  No. 8:20-cv-02177-JLS-ADS, 2021 WL 5926029 (C.D. Cal. Aug. 19, 2021)...................... 34

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)............................................................................................... 32

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016), *as revised* (May 24, 2016) .................................................................. 17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)............................................................................................... 17

*Steinberg v. Icelandic Provisions, Inc.*,
  No. 21-cv-05568-EMC, 2022 WL 220641 (N.D. Cal. 2022), *aff'd,* No. 22-
  15287, 2023 WL 3918257 (9th Cir. June 9, 2023) ............................................................... 23

*Steinberg v. Icelandic Provisions, Inc.*,
  No. 22-15287, 2023 WL 3918257 (9th Cir. June 9, 2023) ............................................. 20, 23

*Stokes v. CitiMortgage, Inc.*,
  No. CV 14-0278, 2014 WL 4359193 (C.D. Cal. Sept. 3, 2014)........................................... 26

*Tabler v. Panera LLC*,
  No. 19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) .............................. 18

*Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*,
  No. 14-CV-00362-BLF, 2014 WL 3705350 (N.D. Cal. July 24, 2014) ............................... 34

*Telesco v. Starbucks Corp.*,
  682 F.Supp.3d 397 (S.D.N.Y. 2023)................................................................................... 21

S. MARTINELLI & COMPANY'S MOTION TO DISMISS AMENDED CLASS ACTION
COMPLAINT AND STRIKE RELIEF AND CLASS CLAIMS; CASE NO.: 5:25-CV-07569-NC

*Terpin v. AT&T Mobility, LLC*,
   No. 2:18-CV-06975-ODW, 2020 WL 5369410 (C.D. Cal. Sept. 8, 2020)............................ 34

*Twohig v. Shop-Rite Supermarkets, Inc.*,
   519 F.Supp.3d 154 (S.D.N.Y. 2021)................................................................................... 20

*U.S. v. Hays*,
   515 U.S. 737 (1995) ............................................................................................................ 16

*Vazquez v. Walmart, Inc.*,
   704 F.Supp.3d 417 (S.D.N.Y. 2023)................................................................................... 28

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)............................................................................................. 16

*Wang v. OCZ Tech. Grp., Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) ........................................................................................ 28

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003)............................................................................................. 16

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000)............................................................................................. 16

*Whiteside v. Kimberly Clark. Corp.*,
   108 F.4th 771 (9th Cir. 2024)....................................................................................... 20, 23

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008)........................................................................................ 20, 24

*Wilson v. Frito-Lay N. Am., Inc.*,
   961 F.Supp.2d 1134 (N.D. Cal. 2013) ...................................................................... 18, 19, 25

**State Cases**

*Clark v. Super. Ct.*,
   50 Cal. 4th 605 (2010) ........................................................................................................ 29

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006)............................................................................................. 29

*Day v. AT & T Corp.*,
   63 Cal. App. 4th 325 (1998)................................................................................................ 30

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011)............................................................................................ 21

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ................................................................................................. 29, 31

S. MARTINELLI & COMPANY'S MOTION TO DISMISS AMENDED CLASS ACTION
COMPLAINT AND STRIKE RELIEF AND CLASS CLAIMS; CASE NO.: 5:25-CV-07569-NC

*Kwikset Corp. v. Superior Ct.*,
  51 Cal.4th 310 (2011) .................................................................................................. 17, 19, 26

*Lee v. Luxottica Retail N. Am., Inc.*,
  65 Cal. App. 5th 793 (2021).................................................................................................. 31

*Michel v. LIDL, US, LLC*,
  No. 725974/2024, 2025 WL 2418956 (N.Y. Sup. Ct. Aug. 01, 2025) .................................. 21

*Stofer v. Shapell Indus., Inc.*,
  233 Cal. App. 4th 176, 182 Cal.Rptr.3d 478 (Cal. App. Ct. 2015)........................................ 26

*In re Tobacco Cases II*,
  240 Cal. App. 4th 779 (2015).................................................................................... 29, 30, 31

**Federal Statutes**

Federal Rule of Civil Procedure 9(b) ..................................................................................... 16, 28

Federal Rule of Civil Procedure 12(b)(1) ..................................................................................... 16

Federal Rule of Civil Procedure Rule 12(b)(6)........................................................................ 16, 24

Federal Food Drug and Cosmetic Act (21 U.S.C. § 301 *et seq.*) ..................................................... 13

21 C.F.R. § 101.2 .......................................................................................................................... 13

21 C.F.R. § 101.30 .............................................................................................................. 13, 19, 22

**State Statutes**

Cal. Bus. & Prof. Code
  §§ 17200, *et seq.* .................................................................................................................. *passim*
  § 17204.................................................................................................................................. 17, 26
  §§ 17500, *et seq.* .................................................................................................................. *passim*
  § 17535....................................................................................................................................... 19

Cal. Civ. Code
  §§ 1750, *et seq.* .................................................................................................................... *passim*
  § 1780.................................................................................................................................... 17, 26
  § 3294....................................................................................................................................... 34

Cal. Health & Safety Code §§ 10987, *et seq.*
  Sherman Food, Drug, and Cosmetic Law ............................................................................... 26

New York General Business Law
  § 349 ................................................................................................................. 11, 15, 19, 27, 32
  § 350................................................................................................................... 11, 15, 19, 27, 32

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claims regarding products other than the two purchased products should be dismissed for lack of standing.

2. Whether Plaintiffs' California False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), New York General Business Law ("GBL") section 349 and 350, and intentional misrepresentation claims should be dismissed as reasonable consumers would not be misled by the labels.

3. Whether Plaintiffs' claims for breach of express warranty should be dismissed.

4. Whether Plaintiffs' claims for equitable relief should be dismissed.

5. Whether Plaintiffs' claim for injunctive relief fails because they now know they can determine whether the products contain Vitamin C by reviewing the label.

6. Whether Plaintiffs' request for punitive damages should be dismissed and stricken.

## I. INTRODUCTION

This case concerns the labeling of certain of Defendant S. Martinelli & Company's ("Defendant" or "Martinelli") juice products. Stripped of rhetoric, Plaintiffs Joly Ramirez and Sorangie Sanchez's ("Plaintiffs") Amended Complaint still incorrectly alleges that Martinelli's juice products are falsely labeled based on front label statements describing the products as "Premium 100% Juice Not From Concentrate" or "100% Juice from U.S. Grown Fresh Apples," yet also include added Vitamin C. Ignoring the qualifying language "Not From Concentrate" and "from U.S. Grown Fresh Apples," and that the on-label ingredient list clearly identifies Vitamin C as an ingredient, Plaintiffs allege that these statements mean the products contain *only* juice with no added ingredients. And—even though Plaintiffs state that they read the labeling and packaging before purchasing the products, which correctly state that they contain 100% juice as defined and required by the United States Food and Drug Administration ("FDA"), and the labels identify Vitamin C as an ingredient—Plaintiffs incorrectly claim that the presence of any ingredient other than juice renders the labels misleading and deceptive.

Plaintiffs fail to plausibly allege that a significant portion of reasonable consumers could

possibly be deceived by the labels. No reasonable consumer would be misled by the front label statements cited by Plaintiffs to conclude that there are no other ingredients in the products, especially where the presence of Vitamin C is clearly disclosed in the ingredient list.

Moreover, Plaintiffs try to bring claims related to products they did not purchase and which are not substantially similar to the two products they allegedly did purchase. Plaintiffs lack standing to pursue claims for these unpurchased products as Plaintiffs fail to adequately alleged that they are substantially similar to the two products that they claim to have purchased.

Plaintiffs' Amended Complaint also suffers from other substantive defects warranting dismissal: Plaintiffs' equitable remedies claims are barred for failure to adequately plead the inadequacy of legal remedies; the Amended Complaint improperly seeks nonrestitutionary disgorgement; Plaintiffs' claim for injunctive relief fails as they cannot assert that they will in the future be unaware of whether the products contain Vitamin C given the ingredient list; and punitive damages are unavailable and otherwise unsupported and should be stricken.

For the reasons set forth herein, Defendant respectfully requests the Court grant its Motion in its entirety, without leave to amend.

## II.    RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiffs both allegedly purchased only the same two products: (1) Martinelli's Apple Juice in half gallon size and (2) Sparkling Cider in 750mL size. (ECF. No. 16 ¶¶ 19, 20.) According to the Amended Complaint, Plaintiff Ramirez, the "California Plaintiff," last purchased these two products in October 2024. (*Id.* ¶ 19.) Plaintiff Sanchez, the "New York Plaintiff," allegedly last purchased Martinelli's Sparkling Cider "around Christmas 2024." (*Id.* ¶ 20.) Plaintiffs admit that, prior to purchase, they each "reviewed the Products' labeling and packaging and read and relied on the Products' representations." (*Id.* ¶¶ 19, 20.)

Plaintiffs allege that the labels of the products they purchased disclose Vitamin C (which Plaintiffs refer to as "ascorbic acid") in the ingredient statements. (*Id.* ¶¶ 5, 14.). Yet, Plaintiffs allege they were misled to believe the purchased products consist solely of juice (*Id.* ¶ 6) and allege that Defendant violated California and New York consumer laws and federal regulations because the front labels fail to include "with added ingredients" or "with added preservatives" next to the

-12-

phrase stating "100% Juice." (*Id.* ¶ 11.) Plaintiffs further wrongly contend reasonable consumers would have no reason to look at ingredients lists for the products with the juice statements on the front label. (*Id.* ¶¶ 4, 6.)

Federal regulations under the Federal Food Drug and Cosmetic Act ("FDCA") (21 U.S.C. § 301 *et seq.*) set out requirements for labeling foods, including beverages. These regulations allow the statement that a product contains 100 percent juice if it contains non-juice ingredient(s) "that do not result in diminution of the juice soluble solids or, in the case of expressed juice, in a change in the volume." 21 C.F.R. § 101.30(b)(3). The FDCA defines what constitutes 100 percent juice based on the Brix level[1] for the specific type of juice. 21 C.F.R. § 101.30(h)(1). The FDCA also defines "100 percent juice as "[j]uices directly expressed from a fruit or vegetable (i.e. no concentrated and reconstituted)" and states that those products "shall be declared as '100 precent juice." 21 C.F.R. § 101.30(i). Plaintiffs do not allege that the products fail to meet the FDA's definition of "100 percent juice."

The regulations further require that the amount of juice in a beverage "shall be prominently place" on the information panel of the product when the product has an information panel and "may be placed on the principal display panel." 21 C.F.R. § 101.30(e), (f). The information panel is the panel found on a product immediately to the right of the principal display panel and typically contains the ingredient list and nutritional fact panel. 21 C.F.R. § 101.2.

More specifically for the products at issue here, the Martinelli half-gallon apple juice front label includes, in a decorative banner on the corner of the label, "PREMIUM 100% JUICE NOT FROM CONCENTRATE," and the back panel sets out the ingredients, in all caps, as "INGREDIENTS: PASTEURIZED 100% APPLE JUICE, VITAMIN C."[2] (ECF No. 16-1, p. 3;

---

[1] Brix measures dissolved solids in a liquid. Water is added to juice concentrates to dilute them to the single-strength Brix levels set by the FDA for juice. 21 CFR § 101.30(h)(1). If a beverage contains "at least the specified minimum Brix" level, the FDA regards it as "100 percent" juice. *Id.* FDA regulations set out that a beverage can "contain[] 100 percent juice and also contain[] non-juice ingredients that do not result in a diminution of the juice soluble solids." *Id*. § 101.30(b)(3). Plaintiffs do not allege that the products here have an incorrect Brix level or juice percent.

[2] Plaintiffs reproduce the front labels only of "exemplars of all Product labels…taken directly from Defendant's website, www.martinellis.com." Plaintiffs do not contend that these are the labels they purportedly saw and relied on when purchasing the products. Plaintiffs omit all the other labels on

Defendant's Request for Judicial Notice ("RJN"), Declaration of Lyza Gianelli ("Gianelli Dec."), Ex. A, p. 1)

The 750 ml Sparkling Cider, sold in a champagne / sparkling wine-style bottles, states in smaller type, at the bottom of the front label: "100% JUICE FROM U.S. GROWN FRESH APPLES." The back label sets out the ingredients, in all caps, as:

> INGREDIENTS: PASTEURIZED 100% CARBONATED APPLE JUICE FROM U.S. GROWN FRESH APPLES, VITAMIN C, NO WATER OR ALCOHOL, NO CONCENTRATES, NO SWEETENERS OR CHEMICAL PRESERVATIVES.

(ECF No. 16-1, p. 4; RJN, Gianelli Dec., Ex. A, pp. 2-3.)

Despite only purchasing two of Defendant's products, Plaintiffs seek to extend the allegations in their Amended Complaint to multiple different products, including products with different front-label statements than those purchased by Plaintiffs and those that contain cherry concentrate in addition to apple juice. (ECF. No. 16 ¶¶ 5-6, 24.) For example, the Sparkling Blush product, referenced by Plaintiffs, states on the front label: "100% JUICE FROM U.S. GROWN FRESH APPLES AND CHERRY CONCENTRATE" (ECF No. 16-1, p. 6; RJN, Gianelli Dec., Ex. B, pp. 2-3.) The 10 oz. Sparkling Apple Juice states on its front label "100% U.S. GROWN FRESH APPLES." (ECF No. 16-1, p. 11; RJN, Gianelli Dec., Ex. B, p. 1.) Both products state the presence of Vitamin C in their ingredient statements. (Gianelli Dec., Ex. B.)

Plaintiffs claim that they paid a premium price for these Products. (ECF No. 16, ¶ 9.) To try to support that claim, Plaintiffs attempt to compare prices of apple juice products with added ingredients offered by competitors Juicy Juice, Knudsen, and Mejier, through various retailers (Walmart, Kroger, and Meijer), with Defendant's Products. (*Id.* ¶ 9.) Plaintiffs, however, fail to allege that these are the prices they actually paid for Defendant's Products or saw on other products, from what geographical market these comparisons were drawn, and if these were prices offered at the time Plaintiffs made their purchases.  For example, there appear to be no Meijer or "Kroger" grocery stores located in New York or California, [3] and neither Plaintiff allegedly purchased

---

these products, including the information panels, which state that the juice contains Vitamin C in the ingredient list.

[3] *See* "Kroger Grocery Store Locations," https://www.kroger.com/stores/grocery (last visited Dec. 11, 2025); *see also* "Meijer Corporate Impact Report 2024 at p. 5,

products at Meijer or Kroger. (*Id.* ¶¶ 19, 20.)

The products identified also are further not directly comparable to Defendant's Products. Juicy Juice apple juice, for example, is made from concentrate, and contains citric acid and Vitamin C as added ingredients. (RJN ¶ 3, Ex. C.) Plaintiffs erroneously claim a gallon of R.W. Knudsen Organic Apple 100% Juice is $10.99 at Kroger, but the product listed on the Kroger website is only available in 32 or 84.5 fl. oz. (i.e. less than a gallon, which is 128 fl. oz). (ECF No. 16 ¶ 9; RJN ¶ 4, Ex. D.) None of these products are identified as from U.S. grown fresh apples. Indeed, none of the other products identify where the apples are grown. (RJN ¶¶ 3-5, Ex. C-E.) Nor do Plaintiffs take into account potential differences in the overall flavor of the products or the reduced price often offered for store brand private label products, such as "Meijer," as compared to non-store brand products. (RJN ¶ 5, Ex. E.)

Based on these allegations, on September 5, 2025, Plaintiffs filed the initial Complaint on behalf of themselves and a putative nationwide class, California and New York subclasses, and a multi-state consumer protection class. (ECF No. 1.) After Defendant filed an initial motion to dismiss, Plaintiffs filed the operative Amended Complaint on November 13, 2025, asserting the following claims for relief: (1) violations of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) violations of California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (3) violations of California's Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750*, et seq.*; (4) violations of New York General Business Law ("GBL") § 349; (5) violations of GBL § 350; (6) unjust enrichment; (7) fraud by omission / negligent misrepresentation; and (8) breach of express warranty. (ECF No. 16 ¶¶ 48-132.)

In addition, Plaintiffs seek, for themselves and the proposed class, actual damages, compensatory damages, statutory damages, punitive damages, restitution, disgorgement, injunctive relief, prejudgment interest, and attorneys' fees and costs. (*Id.* ¶ "128" (p. 22).)

This Court should dismiss Plaintiffs' Amended Complaint for the reasons set out below.

---

https://filecache.mediaroom.com/mr5mr_meijernews/185061/2024_Meijer_Corporate_Impact_Report_FINAL.pdf (last visited Dec. 11, 2025).

-15-

## III.   APPLICABLE LEGAL STANDARDS

### A.   Rule 12(b)(1).

Lack of standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)" because standing pertains to subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *U.S. v. Hays*, 515 U.S. 737, 742 (1995) (standing is jurisdictional, cannot be waived, and is properly addressed under Rule 12(b)(1)). "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### B.   Rule 12(b)(6).

To overcome a Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss, the "factual allegations [in the complaint] must suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1126, 1135 (9th Cir. 2014) (internal citation omitted). A complaint does not state a plausible claim to relief by making "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also id.* (observing that Rule 8 demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Husain v. Campbell Soup Co.*, 747 F.Supp.3d 1265, 1271 (N.D. Cal. 2024).

In addition to plausibility, common law fraud claims and consumer-protection claims that sound in fraud, as Plaintiffs' do here, must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Averments of fraud must be accompanied by "'the who, what, when, where, and how' of the misconduct charged." *Vess,* 317 F.3d at 1106. Rule 9(b)'s heightened pleading standard applies to deception-based claims brought under California's consumer protection laws. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

A court may consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim when material is necessarily relied on by the complaint. *Lee v. City of Los*

-16-

*Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (citation omitted). Allegations that contradict documents referred to in the complaint or matters properly subject to judicial notice or by exhibit need not be accepted as true. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court may dismiss with prejudice where further amendment of the complaint would be futile. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

Under these standards, Plaintiffs have not and cannot state a claim for relief.

## IV.    ARGUMENT

### A.    Plaintiffs Lack Standing To Seek Relief For Products They Did Not Purchase.

Plaintiffs lack standing individually and on behalf of the purported class for any products other than the two products they purchased: the half-gallon apple juice and 750 ml sparkling cider. "In addition to Article III standing, the named plaintiff must establish standing to bring the UCL, CLRA, and FAL claims. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a). These statutes require the plaintiff show that he or she has suffered an "economic injury." *Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861, 868 (N.D. Cal. 2012); *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310 (2011). "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016), *as revised* (May 24, 2016). "One generally cannot expand the scope of his or her claims to include a product not purchased or ads not relied upon." *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929, at *2 (N.D. Cal. Feb. 25, 2013); *Sanchez v. Nurture, Inc.*, 626 F.Supp.3d 1107, 1116–17 (N.D. Cal. 2022); *Holve v. McCormick & Co. Inc.*, 334 F.Supp.3d 535, 547–48 (W.D.N.Y. 2018) (dismissing plaintiff's deceptive labeling claim as to products plaintiff did not allege she purchased).

That Plaintiffs seek to represent others who may have purchased other products is alone insufficient to confer standing. *See Allee v. Medrano*, 416 U.S. 802, 828–829 (1974) ("[A] person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." (internal quotations omitted).). Although there is no controlling Ninth Circuit authority as to whether Plaintiffs in consumer class actions such as this have standing

for products that they did not purchase, majority of courts look to whether there is substantial similarity between the product at issue. *LeGrand v. Abbott Lab'ys,* No. 22-CV-05815-TSH, 2023 WL 3510375, * 4 (N.D. Cal. May 16, 2023) (citing *Miller*, 912 F.Supp.2d at 868, 869). As a result, Plaintiffs must show sufficient similarity between the products and the alleged misrepresentations such that an individualized inquiry into each product is not necessary. *See Miller*, 912 F.Supp.2d at 870. "Where the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Id.; see also Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *10 (N.D. Cal. Oct. 29, 2019) ("When a complaint fails to adequately allege how products a plaintiff purchased are in fact substantially similar to products that the plaintiff challenges, the Court must dismiss the complaint to the extent it seeks to bring claims on the basis of unpurchased products."); *Wilson v. Frito-Lay N. Am., Inc.*, 961 F.Supp.2d 1134, 1140–41 (N.D. Cal. 2013).

Here, Plaintiffs assert claims for a number of different products of varying sizes that they did not purchase,[4] including products with different package shapes, flavors, ingredients, and front label statements. (*Compare* ECF No. 16 ¶¶ 1, 5, 24 with ¶¶ 19, 20; ECF No. 16-1, pp. 3, 4 with pp.6-12.) Beyond Plaintiffs' assertion that the phrase "100% Juice" appears somewhere on the front product labels or packaging and that they also contain other ingredients, Plaintiffs fail to plead how these other products are "substantially similar" to the two products actually alleged to have been purchased (half gallon apple juice and 750 mL sparkling cider). Plaintiffs allege no uniformity in labeling, ingredients, alleged mislabeling, or consumer exposure across these products. *See Wilson*, 961 F.Supp.2d at 1141.

In support of including numerous products, Plaintiffs provide only images of the front of products, which they assert were taken from Martinelli's website, and do not include the entire labels or even ingredient lists. (ECF No. 16-1.) As noted above, there are substantial differences in what is stated on different labels. (*See, e.g.,* RJN, Gianelli Dec., Ex. A, Ex. B.) Such bare,

---

[4] The exact products at issue are unclear. Plaintiffs identify nine different products in some areas of the Complaint (ECF No. 16 ¶¶ 1, 24) and list eleven different products in others (*id.* ¶ 5). Plaintiffs define a range of sizes for only one of the products ("Organic Apple Juice (in 64 fl. oz. and larger sizes)") and fail to provide sizes for any other products. (ECF No. 16 ¶¶ 1, 24.)

-18-

conclusory allegations are insufficient to establish standing to bring suit on a class-wide basis. *Wilson*, 961 F.Supp.2d at 1141–42.

Because Plaintiffs have not purchased any of these other products, which are not substantially similar to the two products Plaintiffs allegedly purchased, Plaintiffs have suffered no injury with respect to those products and thus lack standing to seek relief on this basis. Plaintiffs likewise lack standing to represent a class based on products they did not allegedly purchase.

Plaintiffs' claims regarding unpurchased products (all products other than the half-gallon apple juice and 750 ml sparkling cider) should therefore be dismissed for lack of standing, and the related overbroad product scope and related class allegations should be stricken.

**B.    <u>Plaintiffs' Claims Fail As They Do Not Plausibly Allege Deception Under The Reasonable Consumer Standard.</u>**

Plaintiffs' claims under California and New York consumer protection laws (including the UCL, FAL, CLRA and GBL claims), and the claim for fraud by omission/intentional misrepresentation are all premised on an alleged failure to explicitly include on the Products' front label a statement that identifies the presence of Vitamin C in the Products, an alleged violation of 21 C.F.R. § 101.30(b)(3).  A failure to comply with a regulation, however, is insufficient on its own to state a valid claim for relief.

"To state a fraudulent omission or misrepresentation claim under the CLRA, FAL, or UCL, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, (3) damages." *Rodriguez v. Mondelez Global LLC*, 703 F.Supp.3d 1191, 1209 (S.D. Cal. 2023), *reconsideration denied,* No. 23-CV-00057-DMS-AHG, 2024 WL 1361892 (S.D. Cal. Mar. 29, 2024)*; see also, Kwikset*, 51 Cal.4th at 324. Likewise, to state a claim under GBL §§ 349 or 350, a plaintiff must allege that a defendant engaged in consumer-oriented conduct that was materially misleading and that the plaintiff suffered an injury as a result. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Barreto v. Westbrae Nat., Inc.*, 518 F.Supp.3d 795, 802 (S.D.N.Y. 2021). Moreover, for GBL claims based on omission, a plaintiff "must show either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information." *Kyszenia v. Ricoh USA, Inc.*, 583 F.Supp.3d 350, 360 (E.D.N.Y. 2022).

All of these claims are governed by the "reasonable consumer" test, under which Plaintiffs must "show that members of the public are likely to be deceived." *Rodriguez*, 703 F.Supp.3d at 1209; *see also Whiteside v. Kimberly Clark. Corp.*, 108 F.4th 771, 777-778 (9th Cir. 2024); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023); *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1092 (N.D. Cal. 2017); *Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013). "This requires more than a mere possibility" that Defendant's statements "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Whiteside,* 108 F.4th at 777 (citation omitted); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019); *Sarr v. BEF Foods, Inc.*, No. 18CV6409ARRRLM, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Whiteside*, 108 F.4th 777-78 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). That is, "a complaint asserting a violation of these laws must allege that the packaging will deceive many consumers, not just that a few might be deceived. Although there is no bright-line test, 'the law does not concern itself with trifles.'" *Id.* at 777 (quoting *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 79 (2013)).

While the question of whether a business practice is deceptive will usually be a question of fact not addressed at the pleading stage (*Williams*, 552 F.3d at 938–39), "whether a reasonable consumer would be deceived . . . is a question of law for the Court," which "decide[s] the issue of plausible consumer deception at the motion to dismiss stage." *Husain*, 747 F.Supp.3d at 1274 n.4 (citing *Steinberg v. Icelandic Provisions, Inc.*, No. 22-15287, 2023 WL 3918257, at *1 (9th Cir. June 9, 2023); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F.Supp.3d 154, 160 (S.D.N.Y. 2021). "Dismissal is appropriate when "the advertisement itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be deceived." *Whiteside,* 108 F.4th at 778 (quoting *Williams*, 552 F.3d at 939).

"Where statements or depictions of ingredients on packaging are truthful, as demonstrated by a review of the packaging at issue here, courts may dismiss claims that those statements or

depictions are misleading." *Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV 17–01875–MWF (MRWX), 2017 WL 4286577, at *4 (C.D. Cal. Sep. 20, 2017); *see also Bodenburg v. Apple Inc.*, 146 F.4th 761, 770 (9th Cir. 2025).

A plaintiff's allegation that she or he was personally deceived is insufficient to show that a significant number of reasonable consumers are likely to be misled. *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1303–04 (2011); *Harris v. McDonald's Corp.*, No. 20-CV-6533-RS, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2012). Plaintiffs "cannot pick and choose only information on the bottle that supports their argument as to why they were purportedly misled." *Telesco v. Starbucks Corp.*, 682 F.Supp.3d 397, 404 (S.D.N.Y. 2023); *see also Fink*, 714 F.3d at 742 ("A plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment.").

"Further, allegations of deception must be assessed according to what the advertisement or label depicts and actually says, and not allegations of implied meaning." *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 WL 3817948, at *7 (S.D. Cal. Aug. 14, 2019); *Miller v. Philips N. Am. LLC*, No. 24-CV-03781-RFL, 2025 WL 582160, at *2 (N.D. Cal. Feb. 20, 2025); *see also Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) (dismissing with prejudice because plaintiff "failed to plausibly allege that a reasonable consumer would believe [apple juice] Products labeled natural are free of any trace pesticides").

Courts consistently reject attempts to interpret a statement about an ingredient's presence as a guarantee of its exclusivity or predominance relative to other ingredients. *See, e.g., Serrano v. Campbell Soup Co.*, 773 F.Supp.3d 127, 164 (D.N.J. 2025) (applying California law) ("a reasonable consumer would not interpret the… front label as 'unambiguously representing' that the products do not contain artificial flavors" where the label lacks any such representation); *see also Michel v. LIDL, US, LLC*, No. 725974/2024, 2025 WL 2418956, at *1 (N.Y. Sup. Ct. Aug. 01, 2025) (dismissing GBL claims finding "[r]easonable shoppers seeking to determine whether the juice is 100% juice with no other ingredients would simply turn to the nutrition label to assess the product's

-21-

proportions of various ingredients"); *Martinez v. Mead Johnson & Co.*, No. 5:22-cv-00213, 2022 WL 15053334, at *5 (C.D. Cal. Oct. 22, 2022); *Puri v. Costco Wholesale Corp.*, No. 5:21-CV-01202-EJD, 2021 WL 6000078, at *6 (N.D. Cal. Dec. 20, 2021); *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012).

Here, Plaintiffs have not plausibly alleged that the products' front labeling would deceive or mislead a significant portion of the general public to believe that there may be no other additional ingredients. Plaintiffs focus on the phrase "100% Juice," and ignore the remainder of the statements on the packaging, which state in full, "PREMIUM 100% JUICE *NOT FROM CONCENTRATE*" and "100% JUICE *FROM U.S. GROWN FRESH APPLES*," or similar. (RJN, Gianelli Dec., Ex. A, emphasis added.) Notably, the 10 oz. apple juice states only "100% U.S. GROWN FRESH APPLES." (ECF No. 16-1, p. 11.) Plaintiffs mistakenly claim reasonable consumers would be deceived into believing that the Products do not contain added Vitamin C or only contain juice, but the Products' front labels make no affirmative representation about the absence of Vitamin C, nor do the labels identify juice as an exclusive ingredient.

Plaintiffs' own allegations confirm that:

- The apple juice front label states "PREMIUM 100% JUICE NOT FROM CONCENTRATE." (ECF No. 16, ¶¶ 19-20; RJN, Gianelli Dec., Ex. A p. 1.) This phrase is plausibly understood to mean only that 100% of the juice is not from concentrate. The phrase "100% Juice" in this context does not affirmatively represent that the bottle contains nothing other than juice or that no permitted and otherwise disclosed ingredients are present. Plaintiffs do not dispute that the front labels accurately state that 100% of the juice in the Products is not from concentrate, or allege that the "100% juice" statement, on its own, does not meet the FDA regulations setting out what constitutes "100% juice" for beverages that contain fruit juice. 21 C.F.R. § 101.30(b)(1).

- The sparkling cider front label states "100% JUICE FROM U.S. GROWN FRESH APPLES." (ECF No. 16, ¶¶ 19-20; RJN, Gianelli Dec., Ex. A p. 2-3.) Again, the statement can be understood to communicate the product's juice source as from United States fresh apples, as opposed to dried apples or apples from other countries. It does not disclaim the

-22-

presence of permitted, disclosed ingredients used in minute amounts, such as Vitamin C. Plaintiffs do not dispute that the 100% of the juice is from U.S. grown fresh apples.

- Other labels (which Defendant asserts are not properly at issue here) contain statements that can be understood to mean that 100 percent of the juice in the product is from the specified sources, such as United States grown fresh apples and cherry concentrate. (RJN, Gianelli Dec., Ex. B.) This does not rule out additional ingredients, and Plaintiffs do not dispute that 100 percent of the juice in the product is from the specified sources.

- The ingredient lists disclose Vitamin C. (Gianelli Dec., Ex. A, B.) Plaintiffs do not deny that these disclosures appear on the back labels, focusing only on the front label, and do not allege that any ingredient list disclosure is false.

When viewed in context, other information available on the label dispels any questions the consumer might have about the contents of the products. *Martinez v. Mead Johnson*, 2022 WL 1505334, is instructive here. There the plaintiff alleged that the front label statement that the product was "milk-based" was deceptive because milk was not the primary ingredient in the product. The court determined that the front label statement was not sufficient to demonstrate that the label was deceptive to a reasonable consumer and that a reasonable consumer would be misled by the label, especially where the ingredient list identified milk as an ingredient, although not the first or largest ingredient in the product.

**1.     The entire label is relevant to evaluating the validity of Plaintiffs' claims and cures any ambiguity.**

At best, these front labels are ambiguous about the presence of other ingredients (which are clearly disclosed in the ingredient lists), and prompt consumers to review the entire labeling to assess what representations are being made. Where, as here, the front labels are ambiguous to the reasonable consumer, it is well settled that the entire label, including the back and side label must be considered in evaluating the validity of Plaintiffs' claims for Rule 12(b)(6) motion to dismiss purposes. *See, e.g.*, *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023); *Rodriguez*, 703 F.Supp.3d at 1209; *Whiteside*, 108 F.4th at 781-84; *Steinberg*, 2023 WL 3918257, at *1 (affirming grant of motion to dismiss, "because the front label's "ambiguity [is] resolved by

-23-

reference to the back label"); *Steinberg v. Icelandic Provisions, Inc.*, No. 21-cv-05568-EMC, 2022 WL 220641 (N.D. Cal. 2022), *aff'd,* No. 22-15287, 2023 WL 3918257 (9th Cir. June 9, 2023).

For example, in *Moore v. Trader Joe's*, the Ninth Circuit held that a front label advertisement describing a product as "100% New Zealand Manuka Honey" would not mislead a reasonable consumer into believing the honey was made *solely* from the nectar of Manuka flowers. 4 F.4th 874, 885 (9th Cir. 2021). Rather, the Ninth Circuit reasoned that any specific representation must be considered within the broader context, including the packaging as a whole and any contextual inferences regarding the product itself and its packaging. *Id.* at 882; *see also*, *Husain*, 747 F.Supp.3d at 1274; *Brownell v. Starbucks Coffee Co.*, 681 F.Supp.3d 27, 38 (N.D.N.Y. 2023); *Foster v. Whole Foods Mkt. Grp., Inc.*, No. 23-285-CV, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023). This is especially so when the product is a specialty product, much like the Manuka Honey and Martinelli's 750 mL Sparkling Cider.

The same follows here. The challenged phrases—"Premium 100% Juice Not From Concentrate" and "100% Juice from U.S. Grown Fresh Apples"—read literally, can reasonably be understood to refer to the source of the juice itself—i.e., that the juice portion is undiluted by other juices or water, and not from concentrate—without representing that the products contain nothing else whatsoever. The broader context of the packaging, which clearly sets out the ingredients, likewise confirms that no reasonable consumer would be misled. This is analogous to the label in *McGinity*, where the front label statements were ambiguous, not misleading, as to the actual contents. *McGinity*, 69 F.4th at 1098-1099. This is unlike *Williams v. Gerber*, as the Products contain what the FDA defines as 100 percent apple juice where those contained only a relatively small amount of juice, and none from the depicted fruits. *Williams*, 552 F.3d at 936.

Plaintiffs, importantly, do not allege that they failed to review the entire labels. (EFC No. 16, ¶¶ 19, 20 ("Prior to her purchase of Products, Plaintiff . . . reviewed the Products' labeling and packaging . . .").) Plaintiffs likewise do not dispute that the back labels of the Products at issue here clearly disclose the presence of Vitamin C in the ingredient list and indicates that this is a minor ingredient given its placement in the list and the representation on the back label that the products are 100% juice, as defined by the FDA. *Martinez*, 2022 WL 15053334, at *6 ("Of course, the

nutrition labels on the back of the . . . products are key elements of the contextual mosaic here. Consumers could easily turn the bottle around to read the ingredient label, whereupon they would see that milk is an ingredient, even though it is not the first ingredient listed."); *Varela*, 2021 WL 2172827, at *6 ("the rear/side label herein lists the Product's ingredients, in order" such that "the consumer is informed of the various components of the Product in their respective portions"). In these circumstances, the ingredient lists resolve the ambiguity.

Moreover, a reasonable consumer would draw contextual inferences from the products themselves. *See, e.g., Serrano*, 773 F.Supp.3d at 165 (applying California law) (finding that because "V8 Splash is a brightly colored, shelf-stable liquid—meaning it is not refrigerated…[a] reasonable consumer would not believe V8 Splash is squeezed from picked berries from a berry bush and completely free of artificial ingredients."). The packaging of Martinelli's sparkling beverage products also contributes to the ambiguity as to the ingredients, given the similarity to sparkling wine bottles. The ingredient list or other labeling for these sparkling beverage products emphasize that these sparkling products are alcohol free.

On these facts, Plaintiffs simply cannot show that the Products' labeling is in any way untrue or misleading or that a reasonable consumer would be misled. Based on what the label actually says, including when viewed in context and as a whole, the reasonable consumer would not be deceived into believing that the Products do not contain any additional minimal ingredients.

**2.      Plaintiffs' allegations of regulatory violations are not on their own sufficient to support Plaintiffs' claims.**

Plaintiffs seek to lend plausibility to their claims by predicating them on purported violations of FDA regulations. This too fails. Courts have consistently rejected consumer-protection claims based on "alleged violation of labeling laws alone - separate from any alleged fraud or deception connected with Plaintiffs' reliance or injury." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F.Supp.2d 1134, 1145 (N.D. Cal. Oct. 24, 2013) (dismissing with prejudice plaintiffs' claim based on alleged violation of the Sherman Law or FDA regulations because allegations that the plaintiffs "were harmed in some non-specific way by purchasing Products that they later learned were 'legally worthless'" were insufficient); *Leonhart v. Nature's Path Foods, Inc.*, 2014 U.S. Dist.

LEXIS 46413, at *26 (N.D. Cal. Mar. 31, 2014) (finding that the plaintiff's attempt to make out a consumer-protection claim, "by simply point to a regulation or code provision that was violated" on the challenged label was improper); *Barreto*, 518 F.Supp.3d at 805 ("To state a GBL claim, the challenged act must be inherently deceptive, and such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement." (internal citations omitted)). Accordingly, even if the labeling for the products violated a regulation, that would not be sufficient to save Plaintiffs' consumer protection claims in the absence of an actionable misleading statement, reliance, and resulting economic harm.

To succeed on a claim under the UCL, FAL, CLRA and GBL, a plaintiff must have an actual economic injury *caused* by the alleged unfair competition or unlawful act. *See, e.g.*, Bus. & Prof. Code §17204; Cal. Civ. Code § 1780(a); *Kwikset,* 51 Cal.4th at 325; *Chimienti v. Wendy's Int'l, LLC*, 698 F.Supp.3d 549, 557 (E.D.N.Y. 2023). Because there is nothing misleading or untrue on the products' labels, no economic injury could be caused by the alleged violation of FDA regulations, California's Sherman Food Drug and Cosmetic Law, or New York law.

These reasons apply to all of Plaintiffs' consumer-based claims. Plaintiffs' claims under the unlawful and unfair prongs of the UCL fail for the same reasons as the FAL, CLRA, and fraudulent prong of the UCL. *See, e.g., Punian v. Gillette Co*., No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding that cause of action under the unfair prong of the UCL did not survive where "the cause of action under the unfair prong of the UCL overlaps entirely with Plaintiff's claims" under the FAL, CLRA, and fraudulent prong of the UCL); *Stokes v. CitiMortgage, Inc*., No. CV 14-0278, 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails.").

These reasons also apply to Plaintiffs' fraud by omission/ intentional misrepresentation claim (seventh claim), which require proof of justifiable reliance and resulting damages. *Golikov v. Walmart, Inc.*, No. 2:24-cv-08211, 2025 WL 648532 *4 (C.D. Cal. Feb. 27, 2025), citing *Roper v. Big Heart Pet Brands, Inc.*, 510 F.Supp.3d 903, 910–11 (E.D. Cal. 2020); *Stofer v. Shapell Indus., Inc.*, 233 Cal. App. 4th 176, 186, 182 Cal.Rptr.3d 478 (Cal. App. Ct. 2015).

For all these reasons, all of Plaintiffs' consumer deception claims should be dismissed

-26-

without leave to amend. Further, because Plaintiffs' remaining claims are premised on the same unplausible allegation that consumers are mislead by the front label statements, the entire Amended Complaint must be dismissed.

## C.    Plaintiffs' Unjust Enrichment Claims Fail.

To the extent that Plaintiffs' claim for unjust enrichment is brought under New York law, the Amended Complaint fails to state a claim under any applicable New York law.[5] New York courts hold: "Where a plaintiff 'simply restates the elements of other claims' to support an allegation for unjust enrichment, that claim must be dismissed as duplicative." *Casey v. Odwalla, Inc.*, 338 F.Supp.3d 284, 299 (S.D.N.Y. 2018). Here, the Amended Complaint's unjust enrichment claim (sixth claim for relief) is based on the same alleged conduct as the GBL claims (*i.e.*, Defendant's false and misleading advertising caused Plaintiffs to purchase products (ECF No. 16 ¶¶ 87, 97)) and therefore should be dismissed as duplicative. *Casey*, 338 F.Supp.3d at 299. ("These facts are the exact same that form the basis of her GBL claims. Dismissal is proper.").

As a result, to the extent that Plaintiff Sanchez, the New York Plaintiff, is asserting a stand-alone claim for unjust enrichment under New York law, the state where she is domiciled, that claim should be dismissed and related class allegations stricken. (ECF No. 16 ¶ 105.)

Further, Plaintiff Sanchez's "claim for unjust enrichment is duplicative of her claims under GBL §§ 349 and 350 because the cause of action 'arises from the same facts and do not allege distinct and different damages." *Ashour v. Arizona Beverages USA*, Case 19 Civ 7081 (AT), 2025 WL 961682, at *3-4 (S.D.N.Y. Mar. 28, 2025). Indeed, Plaintiffs only "assert this cause of action in the alternative to legal claims." (ECF No. 16 ¶ 106.) Therefore, her "claim for unjust enrichment fails because she possesses and adequate remedy at law." *Ashour,* 2025 WL 961682, at *10.

Moreover, because Plaintiffs' other claims under the consumer statutes are insufficiently pleaded and fail, as discussed above, so too is the unjust enrichment claim. *See*, *e.g.*, *Aellis O. v. Connor*, No. 22-cv-200 JLS (WVG), 2022 WL 2229421, at *8 (S.D. Cal. June 21, 2022)

---

[5] Although California does not recognize a stand-alone claim for unjust enrichment, Defendant recognizes that the Ninth Circuit has allowed such stand-alone claims at the motion to dismiss stage. *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015); *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016).

(dismissing unjust enrichment claim because the court "already found that [p]laintiff has not pleaded sufficient facts to state his other claims, and his unjust enrichment claim is derivative of those same facts"); *Shuman v. SquareTrade Inc.*, No. 20-CV-02725-JCS, 2021 WL 5113182, at *11 (N.D. Cal. Nov. 3, 2021) (dismissing unjust enrichment claim based on same facts as dismissed UCL claim); *Smith v. Apple, Inc.*, No. 21-CV-09527-HSG, 2023 WL 2095914, at *8 (N.D. Cal. Feb. 17, 2023) (dismissing unjust enrichment claim under Rule 9(b) standard where claim sounded in fraud based on same alleged "uniform course of fraudulent conduct" underpinning UCL, CLRA, FAL, and negligent misrepresentation claims); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 627 (N.D. Cal. 2011) (dismissing unjust enrichment claim as insufficiently pleaded where unjust enrichment claim, along with FAL, UCL, CLRA, and misrepresentation claims, sounded in fraud and therefore were subject to Rule 9(b)). Thus, Plaintiffs' unjust enrichment claim should be dismissed.

**D.    <u>Plaintiffs' Express Warranty Claim Fails as a Matter of Law</u>**

Plaintiffs' eighth claim alleges a claim for breach of express warranty. "To state a claim for breach of express warranty, the plaintiff must show (1) the seller made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Nacarino v. KSF Acquisition Corp.*, 642 F.Supp.3d 1074, 1085–86 (N.D. Cal. 2022) (internal citations omitted). "To constitute a warranty and be actionable, the statement must be specific and unequivocal." *Id.* at 1086 (quoting *Corbett v. PharmaCare U.S., Inc.*, 567 F.Supp.3d 1172, 1199 (S.D. Cal. 2021).). Likewise, under New York law, "A breach of express warranty claim must allege (1) a material statement amounting to a warranty; (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller; (3) breach of this warranty; and (4) injury to the buyer caused by the breach." *Vazquez v. Walmart, Inc.*, 704 F.Supp.3d 417, 428 (S.D.N.Y. 2023).

There is no express statement, however, to support the alleged breach. The Products' front label statements do not constitute an unequivocal or definite promise that the products are solely comprised of juice. *See, e.g., id.* at 1086; *Cimoli v. Alacer Corp.*, 564 F.Supp.3d 897, 905 (N.D.

Cal. 2021); *Henderson*, 2011 WL 1362188, at *12. Additionally, the representation at issue here is true—the apple juice is 100 percent not from concentrate, and the sparkling cider contains 100 percent juice from U.S. Grown Fresh Apples, and the products meet the FDA's definition of 100 percent juice. *See Cimoli*, 546 F.Supp.3d at 905; *Moore*, 4 F.4th at 886; *Jones v. Welch Foods Inc.*, No. 19CV1532LDHVMS, 2020 WL 7024343, at *4 (E.D.N.Y. Nov. 30, 2020) ("because the Products contain fiber, 'With Fiber' on the label is accurate and cannot serve as a basis for a breach of warranty claim"). Plaintiffs do not allege that the Products do not contain apple juice not from concentrate, or apple juice not from U.S. Grown Fresh Apples, nor could they. Plaintiffs, therefore, fail to plausibly allege that the labeling expressly warrants that the Products are solely comprised of juice with no added Vitamin C. *Cosgrove v. Oregon Chai, Inc.*, 520 F.Supp.3d 562, 585 (S.D.N.Y. 2021) ("Plaintiffs have failed to allege that the… products do not comport with the statements on their packaging, and thus have failed to allege a breach of any warranty.").

## E.       Plaintiffs Have Not Sufficiently Alleged A Right To Equitable Relief

Plaintiffs lack standing to seek equitable relief because they fail to adequately plead that they lack an adequate remedy at law.  *Ashour* 2025 WL 961682, *3-4.

First, Plaintiffs' failure to plead facts showing any price/value differential requires the dismissal of their claims under the UCL and FAL, and GBL. The UCL and FAL provide a private party with only two potential remedies: injunction and restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Monetary remedies under the UCL and FAL are construed identically. *Id.* at 1148 (noting compensatory and punitive damages are not available); *see also Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 694 (2006). Under both statutes, the only authorized monetary relief is restitution. *Clark v. Super. Ct.*, 50 Cal. 4th 605, 611 (2010); *Korea Supply Co.*, 29 Cal. 4th at 1147–48.

Restitution under these statutes is limited to the difference between the price paid and the value received. *See, e.g.*, *In re Tobacco Cases II* (*Tobacco II*), 240 Cal. App. 4th 779, 802 (2015); *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 405 (9th Cir. 2018); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016). Requiring a showing of price/value differential to be eligible for restitution under the UCL and FAL is consistent with the fundamental

principle that restitution is unavailable without a "showing of loss," because "restitution without proof of any loss to any plaintiff cannot be characterized as *restitutionary*." *Tobacco II*, 240 Cal. App. 4th at 801 (emphasis in original). And absent a price/value differential, there has been no "loss" for purposes of a monetary award. *Id.* at 802; *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 340 (1998); *see also Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 143 (E.D.N.Y. 2018); (conclusory allegations that plaintiff paid a premium price "are insufficient to identify a cognizable injury"); *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (GBL claims dismissed where plaintiffs "did not allege how much they paid for the beverage, how much they would have paid for it absent the alleged deception, whether [defendant] (as opposed to a third-party distributor) was responsible for any overpayment, or any other details regarding the price premium").

Here, Plaintiffs amended their Complaint to include retail prices of apple juice products with added ingredients purportedly offered by Defendant's competitors. (ECF No. 16, ¶ 9.) The Amended Complaint still, however, contains no allegations regarding how much *Plaintiffs* allegedly overpaid for Products, and Plaintiffs do not allege that competitor prices listed in the Amended Complaint are the actual retail prices for products sold in the same markets where Plaintiffs allegedly purchased Defendant's Products. To the contrary, Plaintiffs do not assert that there are "Kroger" or "Meijer" stores in California or New York, nor are there any such stores.[6] This is insufficient to support a Plaintiffs' claim for restitution (*i.e.*, price/value differential). *See Schippell v. Johnson & Johnson Consumer Inc.*, No. EDCV23410JGBSHKX, 2023 WL 6178485, at *7 (C.D. Cal. Aug. 7, 2023) ("[R]eferences to a third-party retailer's website at best would establish that some other consumer may experience a price differential").

Moreover, the mere existence of other apple juice products on the market with front label statements indicating ingredients added that cost less than Defendant's Products does not create an inference that the price premium for Defendant's Products attaches to the alleged misrepresentation. *Babaian v. Dunkin' Brands Grp., Inc.*, No. LACV 17-4890-VAP (MRWX),

---

[6] *See* "Kroger Grocery Store Locations," https://www.kroger.com/stores/grocery (last visited Dec. 11, 2025); *see also* "Meijer Corporate Impact Report 2024 at p. 5, https://filecache.mediaroom.com/mr5mr_meijernews/185061/2024_Meijer_Corporate_Impact_Report_FINAL.pdf (last visited Dec. 11, 2025).

2018 WL 11445613, at *7 (C.D. Cal. June 12, 2018). Some of the products identified have at least Vitamin C *and* other added ingredients, such as malic acid and citric acid, and none of the purportedly comparable products are identified as created from U.S. grown *fresh* apples. Indeed, none of the other products identify where the apples are grown. And, of course, there is no allegation that these other products are of comparable flavor.

Plaintiffs offer no attempted price comparison for the sparkling cider product or the mixed flavor products. (ECF No. 16, ¶ 9.)

That Plaintiffs seek an unauthorized award of nonrestitutionary disgorgement is evident by their focus on Defendant's alleged unjust enrichment and not Plaintiffs' alleged loss. (ECF No. 16, ¶¶ 57, 110-112.) Plaintiffs assert that "restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds have grown far greater than the legal rate of interest would recognize." (*Id.*, ¶ 57; s*ee also, Chowning*, 733 F. App'x at 406 (restitutionary disgorgement focuses on the plaintiff's loss while nonrestitutionary disgorgement focuses on the defendant's unjust enrichment). Nonrestitutionary disgorgement—"that is, profits that are neither money a defendant took from the plaintiff nor funds in which the plaintiff has an ownership interest"—is not an authorized remedy under the UCL in either an individual or representative action. *Lee v. Luxottica Retail N. Am., Inc.*, 65 Cal. App. 5th 793, 800–01 (2021); *Chowning*, 735 F. App'x at 406; *Korea Supply Co.*, 63 P.3d at 946. Likewise, nonrestitutionary disgorgement is not recoverable under the FAL. *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 577 (N.D. Cal. 2020). Plaintiffs' request for nonrestitutionary disgorgement must therefore be dismissed.

As set forth above, the more appropriate calculation for restitution under the UCL, FAL and GBL would be the "price paid versus value received." *Id.* at 405–06. But the Amended Complaint alleges no *facts* showing any difference between the price paid versus the value received. Accordingly, the Amended Complaint fails to state a claim for monetary relief under the UCL, FAL, and GBL.[7]

---

[7] Under *Tobacco II*, the only other potential measure of restitution is a "full refund," but such a measure is available only when "the plaintiffs prove the product had no value to them. 240 Cal. App. 4th at 794. Plaintiffs do not and cannot allege the products were worthless.

Second, Plaintiffs have otherwise failed to "plead facts that, if true, would show [Plaintiffs] lack an adequate legal remedy" at law in order to avail themselves of this Court's equitable jurisdiction for equitable restitution for past harm under the UCL and CLRA" and for New York claims for unjust enrichment and under GLB §§ 349 and 350. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Ashour*, 2025 WL 961682, *10; *Salvestrini v. Gen. Motors, LLC*, No. 3:23-cv-1556, 2024 WL 3626695, at *6–7 (S.D. Cal. Aug. 1, 2024); *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105–06 (1945). This is true even where a plaintiff attempts to plead equitable relief in the alternative. *Rhynes v. Stryker Corp.*, No. 10-cv-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011).

Plaintiffs' claim for damages is based on precisely the same alleged conduct as the claims for restitution (and injunctive relief)—namely, the allegation that Plaintiffs "would not have bought the Products, or would not have bought them on the same terms, if [they] knew that those 100% Juice representations were false and misleading because the Products contain the preservative ascorbic acid." (ECF No. 16, ¶¶ 19, 20.) The Amended Complaint does not plead any facts which, if true, would show an award of damages would not be an adequate remedy to make Plaintiffs whole. *See, e.g.*, *Sonner*, 971 F.3d at 845; *Phillips v. Brooklyn Bedding LLC*, No. 23-cv-03781-RFL, 2024 WL 2830663, at *1 (N.D. Cal. Mar. 28, 2024); *Smith*, 2023 WL 2768453, at *3; *Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC, 2020 WL 6743912, at *4 (N.D. Cal. Nov. 17, 2020). Based on the foregoing, the Court should dismiss with prejudice Plaintiffs' claims for the equitable remedy of restitution under the UCL, FAL, and GBL (and any other cause of action).

**F.    Plaintiffs Lack Standing to Pursue Injunctive Relief.**

Standing is a threshold issue. *See Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). To have standing to seek injunctive relief, a plaintiff must show they are likely to suffer future injury from the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). While a "customer who is deceived by false advertising *may* have standing to seek injunctive relief forbidding the defendant from engaging in the same false advertising again," the "consumer must still establish the threat of actual and imminent injury" to have any such standing. *Id.* (emphasis in original). The "threatened injury must be certainly impending to constitute injury

in fact, and allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified). Additionally, "where a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff." *Jackson v. General Mills, Inc.*, No. 18cv2634, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020). The plaintiff bears the burden to establish standing for his or her injunctive relief claim. *Id.*

Here, the Amended Complaint fails to allege any facts plausibly establishing standing to pursue injunctive relief. The Amended Complaint establishes that Plaintiffs are now aware that "the Products contain the preservative ascorbic acid." (ECF No. 16, ¶¶ 19, 20.) Further, although Plaintiffs allege they "cannot know for certain whether the false labeling has been or will be corrected" (*id.* ¶ 21), they are also aware that the ingredient lists for the Products expressly state whether the Products contain Vitamin C. (*Id.* ¶ 4 (p. 2:16-18), 5.) Accordingly, there is no threat of future harm because Plaintiffs do not need to purchase the Products again in order to know whether the Products contain Vitamin C, they need only look at the ingredients list. *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019). On these alleged facts, Plaintiffs simply do not face any threat of actual and imminent injury. *See Jackson*, 2020 WL 5106652, at *5; *Casey*, 338 F.Supp.3d at 299.

Accordingly, the Court should dismiss all claims for injunctive relief with prejudice.

**G.    The Amended Complaint Does Not State Facts to Support a Claim for Punitive Damages.**

Plaintiffs seek punitive damages on behalf of themselves and the proposed class in connection with their "Fraud by Omission / Intentional Misrepresentation" claim (ECF No. 16, ¶ 122), and all relief available under their CLRA claim. (*Id.* ¶ 79) Punitive damages are not available under the UCL, FAL, or GBL. *See, e.g., Roper*, 510 F.Supp.3d at 926; *Guzman v. Harris,* No. 16-CV-3499 (GBD) (RLE), 2017 WL 4386369, at *2-3 (S.D.N.Y. Sept. 29, 2017).

The pleadings requirements set forth in *Iqbal* and *Twombly* apply to a claim for punitive damages. *See Young Am.'s Found. v. Napolitano*, No. 17-cv-02255-MMC, 2018 WL 1947766, at *12 (N.D. Cal. Apr. 25, 2018); *Doe 1 v. United Airlines, Inc.*, CV 20-05554-RSWL-AGRx, 2021

WL 4595766, at *6 (C.D. Cal. Apr. 22, 2021); *Somerville v. Medtronic, Inc.*, No. 8:20-cv-02177-JLS-ADS, 2021 WL 5926029, at *13 (C.D. Cal. Aug. 19, 2021). Plaintiffs must allege facts establishing a plausible entitlement to punitive damages to proceed past the pleading stage.

Further, punitive damages under California laws are only available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Nevertheless, a corporate entity cannot commit willful and malicious conduct; instead, 'the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.'" *Terpin v. AT&T Mobility, LLC*, No. 2:18-CV-06975-ODW (KSx), 2020 WL 5369410, at *5 (C.D. Cal. Sept. 8, 2020) (*citing* Cal. Civ. Code § 3294(b)); *see also Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014) ("[A] company simply cannot commit willful and malicious conduct—only an individual can.").

Plaintiffs' Amended Complaint fails to meet this standard. It only adds conclusory allegations that "Defendant's officers, directors, or managers authorized the deceptive labeling at issue in this lawsuit" and "one or more of Defendant's officers acted with oppression, fraud, or malice sufficient to support punitive damages." (ECF No. 16, ¶ 29.) Plaintiffs vaguely plead only that "Defendant knew the true nature of the Product and its ingredients. Nonetheless, Defendant continued to sell the Product using the false and misleading omissions and misrepresentations alleged herein to unsuspecting consumers." (*Id.* ¶ 29, 120.) Plaintiffs, however, fail to allege "any *facts* that would *show* that an officer, director, or managing agent of Defendant authorized or ratified any conduct that could constitute malice, fraud, or oppression." *Ringler v. J.M. Smucker Co.*, 783 F.Supp.3d 1229, 1248–49 (C.D. Cal. 2025) (emphasis added). This is insufficient to assert a claim for punitive damages even at the pleading stage. *Rhynes*, 2011 WL 2149095, at *6 ("[C]onclusory allegations of authorization or ratification fail to satisfy federal pleading standards.").

And the entire premise for punitive damages is contradicted by the fact that Vitamin C is clearly disclosed in the ingredient list. Plaintiffs' request for punitive damages should be dismissed.

## V.    CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court grant the Motion dismissing the causes of action discussed above and strike Plaintiffs' claim for punitive damages and nationwide class claims and dismiss those class claims for lack of standing.

Dated: December 15, 2025                    NIXON PEABODY LLP

                                            By: _____
                                            Bruce E. Copeland
                                            Lauren M. Michals
                                            Seara Sullivan

                                            *Attorneys for Defendant*
                                            S. MARTINELLI & COMPANY