**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLY RAMIREZ and SORANGIE SANCHEZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>S. MARTINELLI & COMPANY,<br><br>Defendant. | CASE NO.: 5:25-cv-07569-NC<br><br>**DECLARATION OF YEREMEY O. KRIVOSHEY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO FOR MODIFICATION OF PROPOSED CASE MANAGEMENT SCHEDULE**<br><br>Initial Complaint Filed: September 5, 2025<br>Trial Date: None Set |

KRIVOSHEY DECL. ISO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CASE MANAGEMENT SCHEDULE; CASE NO. 5:25-CV-07569-NC

I, Yeremey O. Krivoshey, declare as follows:

1.    I am member of the bar of this Court, and a partner at Smith Krivoshey, PC, counsel of record for Plaintiffs in this matter.  I have personal knowledge of the matters set forth herein, and if called upon to do so, would and could testify competently thereto.  I offer this declaration in support of Plaintiff's Opposition to Defendant's Motion for Modification of Proposed Case Management Schedule.

### *Defendant's Initial Refusal to Produce or Disclose Anything*

2.    After the parties conducted a Rule 26(f) conference in late November, Plaintiffs served their initial written discovery consisting of ten interrogatories and nineteen requests for production on November 24, 2025. Martinelli's asked for a one-month extension to respond, which Plaintiffs granted.

3.    On January 23, 2026, Martinelli's served boilerplate, blanket objections refusing to produce or disclose anything. True and correct copies of those discovery responses are attached as **Exhibits 1 and 2**.

### *Defendant's Slow-Tracking of the Protective Order*

4.    It took nearly a month and a half to secure Defendant's cooperation regarding a protective order.

5.    On January 23, 2026, shortly after receiving Defendant's discovery responses, I contacted counsel for Defendant and asked them if Defendant will agree to entry of the N.D. Cal. model protective order for this litigation, stating, "it seems like you're using the lack of a PO as a reason to provide zero responses and not substantively respond to discovery."

6.    No response was provided, so either I or Joel D. Smith followed up again on January 26, 2026, January 30, 2026, February 3, 2026, and February 5, 2026. Finally, on February 7, 2026, Defendant sent a modified version of the N.D. Cal. model protective order for *patent* cases.

7.    Although Plaintiffs objected to the use of the patent model protective order for this case, they ultimately agreed to that structure to avoid further delays. Plaintiffs' counsel followed up concerning edits to the protective order on February 27, 2026, March 4, 2026, and March 5, 2026,

and received no response.

8.      Given the long string of unanswered emails, on March 6, 2026, I sent an email advising that if a stipulated protective order was not filed that day, Plaintiffs would move for an order implementing a protective order, intending to ask the Court to adopt the N.D. Cal. standard model protective order for this case. A true and correct copy of that email is attached as **Exhibit 3**.

9.      After the exchange of a few more emails, the parties reached agreement on the protective order on the evening of March 11, 2026, and it was filed the following day. *See* ECF No. 42.

### *Defendant's Slow-Tracking of Supplemental Discovery Responses*

10.      On February 3, 2026, Joel D. Smith contacted counsel for Defendant to ask them to serve amended substantive discovery responses so that the parties could have a productive meet and confer about any disagreements concerning the discovery requests. A true and correct copy of that email is attached as **Exhibit 4**.

11.      The parties then spent the next few weeks preparing for an unsuccessful mediation, conducted on March 31, 2026. In preparation for the mediation, Martinelli's produced extensive sales data to Plaintiffs.

12.      On April 1, 2026, I contacted counsel for Defendant asking when Defendant would be supplementing its discovery responses, and asking for a list of custodians and proposed search terms. I also asked Defendant to formally produce with Bates numbers the sales data that had been produced for purposes of mediation.

13.      More than a week passed with no response to the prior email, so on April 9, 2026, I emailed counsel to commence the discovery dispute procedures under this Court's standing orders and pursuant to Fed. R. Civ. P. 37. A true and correct copy of that email is attached as **Exhibit 5**.

14.      On April 10, 2026, counsel for Defendant responded that Defendant expected to have amended discovery responses "served by May 4" and that they would "get back to you on a date to meet and confer over custodians and [ESI]." A true and correct copy of that email is attached as **Exhibit 6**.

15.      That same day, on April 10, 2026, I asked Defendant to (a) identify which of the

discovery requests would be updated; (b) send a list of custodians and proposed search terms; (c) formally produce the sales data that was previously exchanged in mediation; and (d) provide a date certain by when Defendant would be making its first production of documents. A true and correct copy of that email is attached as **Exhibit 7**.

16.    On April 14, 2026, following Defendant's failure to respond to the email attached as Exhibit 7, I followed up again. Counsel for Defendant responded, stating, "we intend to update each of the discovery responses served to date and are working to provide those prior to May 4. We will also send you a list of custodians and proposed search terms ahead of a meet and confer and will be producing the sales data produced in mediation as a formal production." Counsel also agreed to meet and confer regarding the outstanding issues on April 15, 2026. A true and correct copy of that email is attached as **Exhibit 8**.

### *Defendant's Withdrawal of Prior Discovery Commitments and Continued Discovery Delays*

17.    On April 16, after the appearance of new counsel for Defendant, I contacted counsel to ask when they anticipate Defendant's first production, list of custodians, search terms, and supplemental discovery responses. A true and correct copy of the relevant email thread is attached as **Exhibit 9**. A week passed with no response, so I followed up on April 23, 2026. *See id.* at p. 2.

18.    On April 28, 2026, Defendant's new counsel said that Defendant would not be able to meet the May 4, 2026 deadline to produce supplemental discovery. Defendant's counsel declined to commit to any date certain for when supplemental discovery response would be coming. *Id.* at p.1

19.    However, new counsel stated that "[w]e can, however, reproduce the sales information that was provided under mediation privilege," and that "[w]e are preparing that information for production." *Id.*

20.    Despite the fact that Defendant's prior counsel stated they would be in a position to provide search terms prior to a meet and confer call scheduled in *mid April*, on May 5, 2026, Defendant's new counsel stated "as we do not yet have any data sources, we cannot propose search terms." A true and correct copy of that email is attached as **Exhibit 10**.

21.    Similarly, Defendant backtracked on its commitment to promptly produce sales data, stating, "we are not in a position to reproduce the sales data shared under mediation privilege at this time" because purportedly the data "is not in a format for discovery production." *Id.* at p.1. Plaintiffs had been asking for that sales data for more than a month, and counsel provided no information suggesting that preparing for production of a single, 174.2 KB Excel file *that had already been produced in mediation* is a complex, time consuming, or burdensome task.

22.    On May 5, 2026, I emailed counsel objecting to further delays of the sales data, and stating that if Defendant would not commit to a date certain to provide amended discovery responses, Plaintiffs would move to compel. A true and correct copy of that email is attached as **Exhibit 11**.

23.    In response to my email, Defendant stated, "we can commit to a deadline for Martinelli's to provide written responses to the interrogatories, RFAs and RFPs of [sic] June 5."[1] A true and correct copy of that email is attached as **Exhibit 12**.

24.    The email also stated that Defendant was "starting from scratch," implying that no work on the discovery responses had been started as of that date. *See id.* at p.1

25.    Defendant's counsel also stated that as of May 5, 2026, despite Plaintiffs' discovery having been served in November 2025, "an e-discovery collection had not yet been performed, including transmission of any PST files," further suggesting that Defendant had not performed any of the tasks it previously said it would perform.

***Defendant's Premature Motion to Alter The Agreed Schedule***

26.    Although Plaintiffs had significant concerns about modifying the schedule based on all of the facts described above, they also expressed a willingness to discuss the subject once Defendant provided amended discovery responses and some progress was made on production of documents. The reasoning is that once Defendant begins to cooperate in discovery, the parties will be in a better position to forecast upcoming events and craft a realistic schedule around that forecast.

---

[1] Plaintiffs served RFAs on April 3, 2026, and then at Defendant's request, first agreed to extend the response deadline to May 18, 2026, and then again to June 5, 2026.

27. On May 14, 2026, Joel D. Smith emailed counsel for Defendant concerning its proposed modification to the schedule, stating, "Presumably, we'll all be in a better position to evaluate whether a schedule modification is warranted and what a reasonable modification would be after we see what, if anything, Martinelli finally produces and discloses on June 5. I suggest we revisit your client's scheduling concerns shortly afterwards." A true and correct copy of that email is attached as **Exhibit 13**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.  Executed in Louisville, Kentucky, on May 18, 2026.

Yeremey O. Krivoshey