**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com
brittany@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOLY RAMIREZ and SORANGIE SANCHEZ, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

S. MARTINELLI & COMPANY,

Defendant.

CASE NO.: 5:25-cv-07569-NC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

Hearing Date: January 20, 2027
Time: 11 am
Courtroom: 5

Initial Complaint Filed: September 5, 2025
Trial Date: None Set

Redacted Version of Document To Be Filed Under Seal

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 20, 2027, at 11 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 280 South First Street, San Jose, CA, 95113, Courtroom 5, 4th Floor in the Courtroom of Magistrate Judge Nathanael M. Cousins, Plaintiffs will and hereby do move the Court for an order granting their motion to certify the proposed classes below, appoint Plaintiffs as class representatives, and appoint Joel D. Smith and Yeremey O. Krivoshey of Smith Krivoshey, P.C. as class counsel.

This motion is made on the grounds that Plaintiffs have met each requirement for certification under Fed. R. Civ. P. 23. This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all supporting declarations and exhibits, the documents on file, and upon such matters as may be presented to the Court at the time of the hearing. Plaintiffs seek certification of the following classes and causes of action:

**California Sparkling Juice Products Class (Damages Only)**

Plaintiff Ramirez seeks to represent the following California class and seeks certification of a damages class under Rule 23(b)(3) concerning Sparkling Juice Products[1]:

> All people in California who purchased a Sparkling Juice Product for personal or household use any time starting from September 5, 2021, through and including the date of notice. The California class seeks certification of the following causes of action: UCL, CLRA, and FAL, and common law fraud.

**New York Sparkling Juice Products Class (Damages and Injunctive Relief)**

Plaintiff Sanchez seeks to represent the New York class and seeks certification of a damages subclass under Rule 23(b)(3) for monetary relief, and an injunctive relief subclass under Rule 23(b)(2):

> All people in New York who purchased a Sparkling Juice Product for personal household use any time starting from September 5, 2021, through and including the date of notice. The New York class seeks certification of the following causes of action: GBL Sections 349 and 350, and common law fraud.

[1] For all proposed classes, "Sparkling Juice Products" are the following: Sparkling Cider (25.4 oz.) (excluding Northwest Blend and Graduation Label varieties); Organic Sparkling Cider (25.4 oz.); and Heritage Sparkling Cider (25.4 oz.).

**New York Non-Sparkling Juice Products Class (Injunctive Relief Only)**

Plaintiff Sanchez also seeks certification of the following Non-Sparkling Juice Products[2] class, solely under Rule 23(b)(2) for injunctive relief:

> All people in New York who purchased a Non-Sparkling Apple Juice Product for personal or household use any time starting from November 1, 2024, through and including the date of notice. The New York class seeks certification of the following causes of action: GBL Sections 349 and 350.

Excluded from each of the proposed classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

Plaintiffs further seek an order appointing Joly Ramirez and Sorangie Sanchez as class representatives for their respective state classes, and the appointment of Joel D. Smith and Yeremey O. Krivoshey of Smith Krivoshey, P.C. as class counsel.

Dated: September 8, 2026

**SMITH KRIVOSHEY, PC**

By: */s/ Joel D. Smith*
Joel D. Smith

Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com
brittany@skclassactions.com

*Attorneys for Plaintiffs*

---

[2] The "Non-Sparkling Apple Juice Products" are the following: Apple Juice (10 oz. and gallon sizes) and Organic Apple Juice (half-gallon).

# TABLE OF CONTENTS

Page

I. Introduction And Summary Of Key Facts .... 1

II. Evidence Common to All Class Members .... 4

A. The Labeling And Ingredients Of The Sparkling Juice Products Are Materially The Same .... 4

B. The Labeling And Ingredients Of The Non-Sparkling Apple Juice Products Are Materially The Same .... 5

C. Classwide Evidence Of Materiality And Deception .... 6

1. Martinelli's Marketing Research .... 6

2. The Consumer Backlash To Ascorbic Acid In Martinelli's Products .... 8

3. Dr. Dennis' Research Demonstrates Materiality And Confirms Consumers Believe "100% Juice" Means The Products Contain No Added Ingredients .... 9

D. Classwide Damages Methodology .... 10

III. Argument .... 10

A. Each Of Rule 23(a)'s Requirements Are Met .... 11

1. Numerosity .... 11

2. Commonality .... 11

3. Typicality .... 12

4. Adequacy .... 12

B. Certification Under Rule 23(b)(2) Is Warranted For The New York Classes .... 13

C. The Proposed Damages Classes Satisfy Rule 23(b)(3) .... 15

1. Common Questions of Law Or Fact Predominate .... 15

2. Damages Are Capable Of Measurement On A Classwide Basis .... 19

3. The Superiority Requirement Is Satisfied .... 21

IV. Conclusion .... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amavizca v. Nutra Mftg., LLC*
2021 WL 682113 (C.D. Cal. Jan 27, 2021) .......... 22

*Bradach v. Pharmavite, LLC*,
735 Fed. Appx. 251 (9th Cir. 2018) .......... 16

*Broomfield v. Craft Brew All., Inc.*,
2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) .......... 17

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .......... 14

*Corbett v. PharmaCare U.S., Inc.*,
2024 WL 1356220 (S.D. Cal. Mar. 29, 2024) .......... 17, 20

*Drake v. Bayer Healthcare LLC*,
2026 WL 1079027 (9th Cir. Apr. 21, 2026) .......... 16, 19

*Dukes v. Wal–Mart Stores, Inc.*,
603 F.3d 571 (9th Cir.2010) .......... 15

*DZ Reserve v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) .......... 10, 18

*Ebin v. Kangadis Family Management LLC*,
297 F.R.D. 561 (S.D.N.Y. 2014) .......... 17, 18

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......... 15

*Fitzhenry-Russel v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018) .......... Passim

*Forcellati v. Hyland's, Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .......... 16

*Frasco v. Flo Health*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 15

*Gershzon v. Colgate-Palmolive Co.*,
2026 WL 1916431 (N.D. Cal. Apr. 13, 2026) .......... 20

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. July 1, 2013) ........ 21

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ........ 12

*Hernandez v. WM Wholesale, LLC*,
2026 WL 1195766 (C.D. Cal. Mar. 16, 2026) ........ 14, 15

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. Feb. 23, 2015) ........ 16

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (N.D. Cal. 2014) ........ 14, 15

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ........ 18

*In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*,
826 F.Supp.3d 1217 (N.D. Cal. Mar. 30, 2026) ........ 22

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ........ 16, 17

*In re Tesla Advanced Driver Assistance Sys. Litig.*,
350 F.R.D. 119 (N.D. Cal. 2025) ........ 14

*In re Wells Fargo Cash Sweep Litig.*,
2026 WL 1846560 (N.D. Cal. June 26, 2026) ........ 22

*In re: Lenovo Adware Litig.*,
2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ........ 20

*J.L. v. Cissna*,
2019 WL 415579 (N.D. Cal. Feb. 1, 2019) ........ 11, 14

*Joint Equity Comm. of Inv'rs. of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*,
281 F.R.D. 422 (C.D. Cal. Mar. 26, 2012) ........ 18

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ........ 12, 19

*Kumar v. Salov N. Am. Corp.*,
2016 WL 3844334 (N.D. Cal. July 15, 2016) ........ 11

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) ........ 21

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ........ 16

*Lytle v. Nutramax Labs, Inc.*,
114 F.4th 1011 (9th Cir. 2024) ........ 3, 16, 19, 20

*Madden v. Midland Funding, LLC*,
237 F. Supp. 3d 130 (S.D.N.Y. Feb. 27, 2017) ........ 21

*Maroney v. Woodstream Corp.*,
2025 WL 945874 (Mar. 28, 2025) ........ 18

*Mobile Emergency Housing Corp. v. HP, Inc.*,
2023 WL 9550942 (N.D. Cal. Dec. 8, 2023) ........ 15

*Montera v. Premier Nutrition Corp.*,
111 F.4th 1018 (9th Cir. 2024) ........ 21

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ........ 18

*Mullins v. Premier Nutrition Corp.*,
2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ........ 17

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025) ........ 16, 19

*Perez v. Rash Curtis & Associates*,
2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ........ 13

*Pettit v. Proctor & Gamble*,
2017 WL 3310682 (N.D. Cal. Aug. 3, 2017) ........ 16

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ........ 19

*Rabin v. Google*,
787 F. Supp. 3d 934 (N.D. Cal. 2025) ........ 15

*Ramirez v. S. Martinelli & Co.*,
2026 WL 272621 (N.D. Cal. Feb. 2, 2026) ........ 14

*Sharpe v. A&W Concentrate Co.*,
2021 WL 3721392 (E.D.N.Y. July 23, 2021) ..... 21

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..... 12

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) ..... 21

*The Civil Rights Educ. & Enf't. Center v. RLJ Lodging Trust*,
2016 WL 314400 (N.D. Cal. Jan. 15, 2016) ..... 11

*Torres v. Prudential Fin. Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ..... 10

*Tyson Foods v. Bouaphakeo*,
577 U.S. 442 (2016) ..... 15

*Wang v. Chinese Daily News, Inc.*,
737 F.3d 538 (9th Cir. 2013) ..... 15

*Wendt v. Host Int'l, Inc.*,
125 F.3d 806 (9th Cir. 1997) ..... 17

*Willis v. Colgate Palmolive Co.*,
2023 WL 11915708 (C.D. Cal. Jan. 5, 2023) ..... 12

*Yamagata v. Reckitt Benckiser LLC*,
2019 WL 3815718 (N.D. Cal. June 5, 2019) ..... 16, 17

**Statutes**

Cal. Health & Safety Code § 110100(a) ..... 11

N.Y. Gen. Bus. Law §§ 349(h), 350-e(3) ..... 20, 21

**Rules**

Fed. R. Civ. P. 23(a)(1) ..... 11

Fed. R. Civ. P. 23(a)(2) ..... 11

Fed. R. Civ. P. 23(a)(3) ..... 12

Fed. R. Civ. P. 23(a)(4) ..... 12

Fed. R. Civ. P. 23(b)(2) .......... Passim

Fed. R. Civ. P. 23(b)(3) .......... Passim

**Regulations**

1 CRR-NY 259.1 .......... 11

21 C.F.R. § 101.30(b)(3) .......... 1

**Other Authorities**

2 Newberg and Rubenstein on Class Actions § 4:37 (6th ed.) .......... 14

## I. Introduction And Summary Of Key Facts

Under federal and state law, companies like Defendant S. Martinelli & Company ("Martinelli's") may say their juice products are "100% Juice" (or words to that effect) even if they also contain preservatives, so long as they disclose the use of preservatives on the front labeling. *See* 21 C.F.R. § 101.30(b)(3). It is an easy-to-follow rule that ensures truth in advertising, and alerts people to ingredients that they may want to know about when making their purchase decision.

Martinelli's sells a variety sparkling and non-sparkling apple juice products labeled "100% Juice," such as its ubiquitous holiday beverage, Martinelli's Sparkling Cider, and its iconic, apple-shaped, single-serving juice bottles which are popular among children. Martinelli's internal documents [redacted].[5] When asked in a 2023 interview what makes his company stand out, Martinelli's President and CEO Gun Ruder responded, "What really sets us apart is that Martinelli's products are 100% juice, made from U.S.-grown apples with NO added sweeteners or preservatives." Ex. 1 at 5 (capitalization in original). In short, there is no serious dispute that the "100% Juice" claim is material.

There also is no serious dispute that the claim is misleading. The truth is, Martinelli's adds [redacted]

---

[3] Ex. 30 at MARTINELLIS_00000089.

[4] *Id.* at MARTINELLIS_00000068.

[5] Ex. 31 at MARTINELLIS_00002402 ("[redacted]"); *see also id.* at -00002409.

[6] Ex. 32 at MARTINELLIS_00002663; *see also* Ex. 33 at MARTINELLIS_00002691 ("[redacted]"); Ex. 34 at MARTINELLIS_00002692 ("[redacted]").

[redacted].[7]

In its opposition brief, Martinelli's will tell the Court that ascorbic acid is just harmless Vitamin C, no different from what is already present in apples. [redacted].”[10]

[redacted].[14] Some non-sparkling juice

---

[7] *See* Ex. 35 at MARTINELLIS_00002804; *see also* Ex. 36 MARTINELLIS_00003468 (“… [redacted].”).

[8] Ex. 38 at MARTINELLIS_00001988.

[9] Ex. 34 at MARTINELLIS_00002692.

[10] Ex. 39 at MARTINELLIS_00001991.

[11] Ex. 40 at MARTINELLIS_00003934.

[12] *See* Ex. 37 at MARTINELLIS_00004561.

[13] *Id.*; *see also* Ex. 41 at MARTINELLIS_00000110 [redacted]

[14] Ex. 42 at MARTINELLIS_00002056.

customers later noticed the change, and when they did, Martinelli's faced a backlash of customer complaints and a petition on change.org over the issue. That incident provided a real-world case-study confirming Martinelli's [redacted], as well as illustrating consumer deception.

Class certification is straightforward here. This motion largely tracks with *Fitzhenry-Russel v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607 (N.D. Cal. 2018) (Cousins, J.), where this Court granted class certification in another matter involving false labeling concerning the ingredients of a beverage product. The false labeling here is uniform: Martinelli's admitted that the front labeling of all the subject products said they were "100% Juice," but said nothing about an added, non-juice ingredient. Plaintiffs are seeking certification of statutory consumer protection claims that the Ninth Circuit has held are "generally ideal for class certification." *Lytle v. Nutramax Labs, Inc.*, 114 F.4th 1011, 1034 (9th Cir. 2024). Plaintiffs' damages methodology is supported by the same two experts, Colin Weir and Dr. Michael Dennis, who survived *Daubert* challenges in this Court's decision in *Fitzhenry-Russel*. Dr. Dennis performed the same three tasks as in *Fitzhenry-Russel*, measuring consumer understanding of the challenged term, measuring whether the term is material to consumers, and conducting a price premium analysis. *See Fitzhenry-Russel*, 326 F.R.D. at 600. As in *Fitzhenry-Russel*, Mr. Weir then takes Dr. Dennis's price premium findings to calculate damages.

Plaintiffs seek certification of the following classes, with each Plaintiff seeking to represent their respective state classes:

> **California Sparkling Juice Products Class**[15] (Damages Only):
>
> All people in California who purchased a Sparkling Juice Product for personal or household use any time starting from September 5, 2021, through and including the date of notice. The California class seeks certification of the following causes of action: UCL, CLRA, and FAL, and common law fraud.
>
> **New York Sparkling Juice Products Class** (Damages and Injunctive Relief Subclasses):
>
> All people in New York who purchased a Sparkling Juice Product for personal household use any time starting from September 5, 2021, through and including the date of notice. The New

[15] For all proposed classes, "Sparkling Juice Products" are the following: Sparkling Cider (25.4 oz.) (excluding Northwest Blend and Graduation Label varieties); Organic Sparkling Cider (25.4 oz.); and Heritage Sparkling Cider (25.4 oz.).

York class seeks certification of the following causes of action: GBL Sections 349 and 350, and common law fraud.

**New York Non-Sparkling Juice Products[16] Class** (Injunctive Relief Only):

All people in New York who purchased a Non-Sparkling Apple Juice Product for personal or household use any time starting from November 1, 2024, through and including the date of notice. The New York class seeks certification of the following causes of action: GBL Sections 349 and 350.

## II. Evidence Common to All Class Members

### A. The Labeling And Ingredients Of The Sparkling Juice Products Are Materially The Same

The first products at issue are the "Sparkling Juice Products," which consist of Sparkling Cider (25.4 oz.) (excluding Northwest Blend and Graduation Label varieties); Organic Sparkling Cider (25.4 oz.); and Heritage Sparkling Cider (25.4 oz.).

Martinelli's admits that from at least September 5, 2021, through and including April 3, 2026, the front labeling of each of the SPARKLING JUICE PRODUCTS said they were "100% Juice." *See* Ex. 2 (Response to RFA No. 13) ("Martinelli's admits that the front labels of the selected SPARKLING JUICE PRODUCTS cherry-picked by the plaintiffs contained the statement '100% JUICE' between September 5, 2021 and the present"). That term was coupled with the phrase "from U.S. grown fresh apples, or in the case of the organic sparking apple juice, "from U.S. grown fresh organic apples.' [redacted]. *See* Ex. 43 (Second Supp. Response to Interrogatory No. 7). None of the products disclosed any preservatives or added ingredients on the front label. Ex. 2 (Response to RFA No. 19). For example, the front label of Martinelli's Sparkling Cider looked like this:

[16] The "Non-Sparkling Apple Juice Products" are the following: Apple Juice (10 oz. and gallon sizes) and Organic Apple Juice (half-gallon).




Ex. 3; *see also* Exs. 4, 6 (labeling for the other Sparkling Juice Products).

**B. The Labeling And Ingredients Of The Non-Sparkling Apple Juice Products Are Materially The Same**

The second products at issue are the "Non-Sparkling Apple Juice Products," which consist of apple juice sold in 10 oz. and gallon sizes, and organic apple juice sold in half-gallon jugs. For each of these products, the front label said "Premium 100% Juice Not From Concentrate," except for the individual 10 oz. bottles, which had the words "100% Apple Juice" embossed on the bottles and printed on multi-pack crates. *See* Ex. 2 (Response to RFA Nos. 10, 12). [redacted]. *Id.* None of the Apple Juice Products ever disclosed the addition of a preservative or added ingredient on the front label. *See* Ex. 2 (Response to RFA Nos. 18-19); *see also* Exs. 10-13 (depicting labeling).

### C. Classwide Evidence Of Materiality And Deception

#### 1. Martinelli's Marketing Research

[redacted]

[redacted]

[redacted]:

[redacted]

[redacted]

Ex. 45 at MARTINELLIS_00000178, 195.

[redacted]

[redacted]

*Id.* at MARTINELLIS_00000089.

### 2. The Consumer Backlash To Ascorbic Acid In Martinelli's Products

After Martinelli's began adding ascorbic acid to the non-sparkling juice products, an internal Martinelli's document stated, [redacted]. Someone began a petition on change.org to "Encourage Martinelli's to Eliminate Corn-Derived Vitamin C from their Apple Juice." Ex. 14 (change.org campaign). Some of the complaints described various medical conditions that were impacted by the undisclosed addition of ascorbic acid, such as gastro-intestinal problems and corn allergies. Other complaints focused more generally on the lack of disclosure about added ingredients in supposedly "100% Juice." A few examples are quoted below:




Ex. 15 at MARTINELLIS_00002673.

[redacted]

Ex. 48 at MARTINELLIS_00002070.

[redacted]

Ex. 49 at MARTINELLIS_00002687.

[redacted]

Ex. 50 at MARTINELLIS_00002068.

[redacted]

Ex. 51 at MARTINELLIS_00004235.

> *So many people have used this product, including my family, because it was the only true juice (had no additives or other ingredients). Please think about your customers before moving forward with a decision to change your product to something that's ultimately inferior.*

Ex. 16 (change.org comments).

**3. Dr. Dennis' Research Demonstrates Materiality And Confirms Consumers Believe "100% Juice" Means The Products Contain No Added Ingredients**

Plaintiffs' survey expert, Dr. J. Michael Dennis has been personally involved in designing and conducting surveys about the opinions, perceptions, attitudes, preferences, and values of consumers for more than twenty-five years. Ex. 21, Dennis Decl. at ¶¶ 3-16. Using methods well established in the published literature, he polled consumers who have purchased the Products in the last twelve months, to determine how they understood the phrase "100% Juice" as presented on the labeling of those products. *See id.* ¶¶ 21-22, 31, 70-79. Roughly 90 percent of consumers understood that the term meant that the products contained "only juice and do[] not have an additional ingredient," and that the products "do[] not have an added preservative," and a majority believed that the products do not have *added* Vitamin C, apart from "Vitamin C that comes naturally from the apples." *See id.* ¶¶ 75-78. The "100% Juice" claim *doubled* these beliefs above and beyond what consumers may believe above apple juice products generally. *See id.*

Further, as part of his materiality survey, Dr. Dennis found that 92% of those surveyed stated a preference for products with the "100%" claim, while only 8% stated a preference for the products without the "100%" claim. *See id.*, ¶¶ 23, 32, 100 ("By a factor of 11 to 1, consumers prefer to purchase the Products with the '100% claim over Products without the '100%' claim."). Evidence of materiality and consumer deception is overwhelming, and can be proven by this common evidence.

**D. Classwide Damages Methodology**

Plaintiffs' survey expert Dr. Dennis and economics expert Colin Weir propose using conjoint analysis to measure and isolate the price premium that consumers paid as a result of the "100% Juice" claim on the Sparkling Juice Products. Ex. 21, Dennis Decl., ¶¶ 106-178; Ex. 52, Weir Decl., ¶¶ 10, 22. Conjoint analysis is a standard method for measuring damages in false advertising cases like this one. *See* Ex. 21 Dennis Decl., ¶¶ 109-113. It utilizes a survey where respondents are presented with various choices of product attributes, prices and alternatives, and asked to rank their preferences, which allows researchers to then apply statistical methods to value those attributes in the market. *See id.* ¶ 108. Here, Dr. Dennis, in consultation with Mr. Weir, designed a conjoint survey to measure the price premium solely attributable to the "100% Juice" label. *Id.* at ¶¶ 115-125. Based on this analysis, which is described more fully in Section III.C below and in Dr. Dennis' and Mr. Weir's declarations, they concluded that consumers paid 7.29% more for Martinelli's Sparkling Juice Products as a result of the misleading labeling. *Id.* at ¶ 33; Ex. 52, Weir Decl., ¶ 63.

**III. Argument**

A party seeking certification must "meet the requirements of Rule 23(a), as well as one of three possible requirements under Rule 23(b)." *Torres v. Prudential Fin. Inc.*, 2024 WL 4894289, at *3 (N.D. Cal. Nov. 26, 2024). "The decision of whether to certify a class is entrusted to the sound discretion of the district court." *Fitzhenry-Russel*, 326 F.R.D. at 607. Nonetheless, the Ninth Circuit "accord[s] the district court noticeably more deference" when reviewing an order granting class certification than when it reviews a denial. *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024) (internal quotation omitted). Certification is warranted here under Rules 23(a), 23(b)(2), and 23(b)(3).

**A. Each Of Rule 23(a)'s Requirements Are Met**

**1. Numerosity**

Rule 23(a)(1) requires the classes to be so numerous that joinder of all members of the classes is "impracticable." Fed. R. Civ. P. 23(a)(1). Generally, "the numerosity requirement is usually satisfied where the class comprises 40 or more members, and generally not satisfied when the class comprises 21 or fewer members." *J.L. v. Cissna*, 2019 WL 415579 at *4 (N.D. Cal. Feb. 1, 2019) (Cousins, J.) (internal quotation omitted). A court also "may make common-sense assumptions and reasonable inferences" when analyzing numerosity. *The Civil Rights Educ. & Enf't. Center v. RLJ Lodging Trust*, 2016 WL 314400 at *6 (N.D. Cal. Jan. 15, 2016). Here, Martinelli's sold millions of the subject products in California and New York during the class period. *See* Ex. 52, Weir Decl., at ¶¶ 67-69.

**2. Commonality**

Rule 23(a)(2)'s commonality requirement "only requires a single significant question of law or fact." *Fitzhenry-Russel*, 326 F.R.D. at 607 (internal quotation omitted). In a false labeling case, "the central question is whether [Martinelli's] labels were likely to deceive a reasonable consumer." *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *4 (N.D. Cal. July 15, 2016). Where there are "identical statements on the labels of the products at issue," the answer to that question will "be based on common facts." *Id.* For example, in *Fitzhenry-Russel,* this Court held that the question of whether the "Defendant's 'Made From Real Ginger' label [was] likely to deceive reasonable consumers" satisfied Rule 23(a)(2), and explained that "[i]n other consumer fraud cases in this district, courts have found similar common questions to be sufficient to satisfy commonality." *Id.* at 607-608 (collecting authorities). So too here, a significant common question of fact is whether Martinelli's representation that its sparking and non-sparkling juice products are 100% juice is likely to deceive reasonable consumers. There is also a significant question of common fact concerning whether the "100% Juice" claim is material. Another common question is whether Martinelli's labeling violates Cal. Health & Safety Code § 110100(a) and 1 CRR-NY 259.1, thereby supporting a UCL claim under the "unlawful" prong. *See* FAC at ¶¶ 5, 55 (basing UCL claim in part on violations of § 110100(a); *Kumar*, 2016 WL 3844334 at *5 (holding similar allegation supported commonality).

Another common question is whether class members "were damaged by purchasing [the products] based on false and misleading" representations. *Willis v. Colgate Palmolive Co.*, 2023 WL 11915708 at *13 (C.D. Cal. Jan. 5, 2023) (following *Fitzhenry-Russell* when holding commonality requirement satisfied).

**3. Typicality**

Rule 23(a)(3) requires the representative party to have claims that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This standard is 'permissive,' and claims are typical if they are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Fitzhenry-Russel*, 326 F.R.D. at 608 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *accord Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Here, Plaintiffs' claims are typical of the claims of other class members because, like all class members, they purchased the subject Products (both apple juice and sparkling cider varieties) during the class period when they were falsely labeled "100% Juice";[17] they believed the labeling;[18] they paid a price premium based on that labeling claim;[19] and they are seeking monetary relief on behalf of themselves and class members (and in the case of Plaintiff Sanchez, injunctive relief requiring Martinelli's to "chang[e] the label" so it is "truthful").[20]

**4. Adequacy**

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine this, the Court asks two questions: first, do the proposed class representatives and their counsel 'have any conflicts of interest with other class members'; and second, will the proposed class representatives and their counsel 'prosecute the action vigorously on behalf of the class'?" *Fitzhenry-Russel*, 326 F.R.D. at 611 (quoting *Staton v.*

---

[17] Ex. 17, Sanchez Tr., 42:2-14; 60:22-61:3; 163:14-20; Ex. 18, Ramirez Tr., 58:3-7; 93:10-14;

[18] Ex. 17, Sanchez Tr., 67:13-23; 84:23-85:4; 88:14-21; 95:17-22; 200:4-14; 216:9-14; 281:9-282:5; Ex. 18, Ramirez Tr., 56:18-57:1; 59:9-60:1; 75:10-25; 94:25-96:25; 172:3-173:1.

[19] Ex. 21, Dennis Decl., ¶ 33; Ex. 52, Weir Decl., ¶¶ 67-68, 75.

[20] Ex. 17, Sanchez Tr., 216:22-217:4; 231:17-23; 284:8-11; Ex. 18, Ramirez Tr., 82:17-25; 83:12-84:9; 109:3-9; 113:23-20.

*Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). Both elements are satisfied here with respect to Plaintiffs and to the law firm Smith Krivoshey.

Plaintiffs will continue to fairly and adequately protect the interests of the members of the Class, because it is in their best interest to prosecute the claims alleged in the Complaint to obtain full compensation due to all class members. They have no conflict with other class members. Rather, they stand in the same shoes as other class members, seek the same relief as other class members, and have a common interest in obtaining all of the relief sought. *See* Ex. 17, Sanchez Tr., 216:22-217:4; 231-17-23; 284:8-11; Ex. 18, Ramirez Tr., 82:17-25; 83:12-84:9; 109:3-9; 113:23-20.

Likewise, the attorneys at Smith Krivoshey have no conflicts of interest with members of the class, and they have worked hard to prosecute this action efficiently, promptly, and with civility. They practice almost exclusively in complex class action litigation, and courts have commended the work they have done. *See* Ex. 19, *Niemczyk v. Pro Custom Solar LLC*, D.N.J. Case No. 19-cv-07846, Trans. Aug. 18, 2025 Final Approval Hearing at 17:2-5 (stating Smith Krivoshey is "well-experienced in complex class action litigation. That ability manifested itself here in their negotiation of a very beneficial resolution for the settlement class."); *Chaisson v. Univ. of S. Cal.*, Los Angeles Superior Court Case No. 20STCV270652, July 25, 2024, Order Granting Class Cert. at 25:6 (citing Smith Krivoshey's "extensive" experience "in representing consumers in class actions" when granting class certification); *cf. Perez v. Rash Curtis & Associates*, 2021 WL 4503314 at *2 (N.D. Cal. Oct. 1, 2021) (Gonzalez-Rogers, J.) (stating in a post-trial order where Mr. Krivoshey was one of the lead attorneys before forming Smith Krivoshey, "This Court does not often offer praise, expecting high performance from all counsel. Here though, experienced counsel has done an excellent job on behalf of plaintiff and the class and vigorously pursued the claim despite numerous hurdles."); *see also* Ex. 20 (Firm Resume). This is sufficient to establish adequacy. *See Fitzhenry-Russel*, 326 F.R.D. at 611.

### B. Certification Under Rule 23(b)(2) Is Warranted For The New York Classes

Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) only requires the Court to look at whether class members seek uniform relief from a practice applicable to all of them." *Cissna*, 2019 WL 415579 at *11 (internal quotation omitted). "[A] plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *In re Tesla Advanced Driver Assistance Sys. Litig.*, 350 F.R.D. 119, 137 (N.D. Cal. 2025). False advertising claims challenging uniform product representations are generally appropriate for certification under Rule 23(b)(2). *See*, *e.g.*, *id.* (certifying Rule 23(b)(2) class in false advertising case); *Hernandez v. WM Wholesale, LLC*, 2026 WL 1195766 at *3-4 (C.D. Cal. Mar. 16, 2026) (same).

Here, Plaintiff Sanchez seeks an injunction prohibiting Martinelli's from representing that the Products are "100% Juice," "Premium 100% Juice," or "100% Apple Juice" unless it discloses the use of preservatives or added ingredients on the front label. "[E]ach class member would be entitled to the same injunction, namely, the cessation of the misleading advertising that caused their common injury…. Therefore, the injunctive subclass is proper under Rule 23(b)(2)." *Hernandez*, 2026 WL 1195766 at *4. Notably, this Court already found that Plaintiffs have standing to pursue injunctive relief claims when it denied Defendant's motion to dismiss. *Ramirez v. S. Martinelli & Co.*, 2026 WL 272621, at *6 (N.D. Cal. Feb. 2, 2026).

In its opposition, Martinelli's will argue that certification under Rule 23(b)(2) is impermissible where the primary relief sought is monetary in nature. However, this argument would be misplaced for two reasons. First, the argument is entirely inapplicable to the New York Non-Sparkling Apple Juice Products Class, which only seeks injunctive relief.

Second, with respect to the New York Sparkling Juice Products Class, Plaintiff Sanchez seeks certification of separate damages and injunctive relief subclasses. "Ninth Circuit precedent indicates that [courts] can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class." *Brown v. Google, LLC*, 2022 WL 17961497, at *20 (N.D. Cal. Dec. 12, 2022) (quoting *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (N.D. Cal. 2014)); *see also* 2 Newberg and Rubenstein on Class Actions § 4:37 (6th ed.) ("[A] case may be certified under Rule 23(b)(2) for some purposes [*i.e.*, injunctive relief] and under other portions of the Rule for money

damages.”). For example, “in *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571 (9th Cir.2010), *rev’d on other grounds*, 131 S.Ct. 2541 (2011) (en banc), the Ninth Circuit noted that the district court had the option of certifying a Rule 23(b)(2) equitable relief class and a separate Rule 23(b)(3) class for damages if it concluded that it could not certify a single Rule 23(b)(2) class because monetary relief predominated over the equitable relief sought.” *In re ConAgra*, 302 F.R.D. at 573. Similarly, in *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011), the Ninth Circuit “indicat[ed] that the court could certify a Rule 23(b)(2) class for injunctive relief and a separate Rule 23(b)(3) class for damages.” *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (citing *Ellis*, 657 F.3d at 987). “Thus, the Court may certify an injunctive class under Rule 23(b)(2) regardless of whether Plaintiffs primarily seek to obtain monetary relief in this action overall.” *Mobile Emergency Housing Corp. v. HP, Inc.*, 2023 WL 9550942, at *14 (N.D. Cal. Dec. 8, 2023); *see also*, *e.g.*, *Hernandez*, 2026 WL 1195766 at *4 (“the fact that Plaintiff also seeks to certify a damages subclass does not undermine the injunctive relief subclass’s certification under Rule 23(b)(2)”).

### C. The Proposed Damages Classes Satisfy Rule 23(b)(3)

Both Plaintiffs seek certification of damages classes based on the “100% Juice” labeling of the Sparkling Juice Products. Rule 23(b)(3) authorizes class certification where “questions of law or fact common to class members predominate over any questions affecting only individual members,” and “a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

#### 1. Common Questions of Law Or Fact Predominate

Predominance “‘asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.’” *Rabin v. Google*, 787 F. Supp. 3d 934, 949 (N.D. Cal. 2025) (quoting *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). “In determining if common questions predominate, the Court identifies the substantive issues related to plaintiff's claims and then considers the proof necessary to establish each element of the claim, and then considers how these issues would be tried.” *Fitzhenry-Russell*, 326 F.R.D. at 612; *see also Frasco v. Flo Health*, 349 F.R.D. 557, 574 (N.D. Cal. 2025) (“The analysis is grounded in the elements of the underlying cause[s] of action . . . .”) (internal quotation omitted).

Some "variation among" class members' claims or "potential difficulty in proof" do not necessarily "defeat predominance under Rule 23(b)(3)." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands*, *Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001).

Plaintiffs seek certification of consumer protection and fraud claims under the laws of their respective states. As set forth below, both types of claims are susceptible to classwide resolution.

**a. Statutory Consumer Protection Claims**

Starting with the California statutory claims, "'[c]ourts generally consider claims under California's Unfair Competition Law ('UCL'), False Advertising Law ('FAL') and Consumers Legal Remedies Act ('CLRA') together.'" *Fitzhenry-Russell*, 326 F.R.D. at 612 (quoting *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 982-83 (C.D. Cal. Feb. 23, 2015). "Each statute allows plaintiffs to establish materiality and reliance (*i.e*., causation and injury) by showing that a reasonable person would have considered the defendant's representation material." *Id.* (internal quotation omitted). "The standard 'does not require that class members have a uniform understanding of the meaning of' the challenged representation." *Id.* (quoting *Pettit v. Proctor & Gamble*, 2017 WL 3310682 at *3 (N.D. Cal. Aug. 3, 2017)). Likewise, "whether or not Defendants' claims are misleading is an objective, classwide inquiry for purposes of the UCL, FAL and the CLRA." *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014). This is why the Ninth Circuit has repeatedly stated, "deceptive marketing claims under these California consumer protection statutes are generally ideal for class certification." *Noohi v. Johnson & Johnson Consumer Inc*., 146 F.4th 854, 868 (9th Cir. 2025) (quoting *Lytle*, 114 F.4th at 1034); *see also Bradach v. Pharmavite, LLC*, 735 Fed. Appx. 251, 254-55 (9th Cir. 2018) ("CLRA and UCL claims are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product" (internal quotation omitted.

The standard for certification of claims under New York's GBL §§ 349 and 350 is essentially the same. *See Yamagata v. Reckitt Benckiser LLC*, 2019 WL 3815718 at *1 (N.D. Cal. June 5, 2019) (applying similar analysis when granting certification of claims under the CLRA, UCL, FAL, and GBL §§ 349 and 350); *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409–10 (S.D.N.Y. 2015) ("*EZ Seed*") (same); *Drake v. Bayer Healthcare LLC*, 2026 WL 1079027 at *1 (9th Cir. Apr. 21,

2026) (applying similar analysis regarding predominance when affirming certification of CLRA and GBL claims). As with the California statutes, under the GBL, materiality involves "an objective inquiry." *EZ Seed*, 304 F.R.D. at 409. "Additionally, neither Section 349 nor 350 require proof of reliance." *Id.* The predominance requirement is usually satisfied where, as here, the plaintiff challenges uniform product labeling. *See*, *e.g.*, *id.* at 409–410; *Ebin v. Kangadis Family Management LLC*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014); *Yamagata*, 2019 WL 3815718 at *1.

Here, as in *Fitzhenry-Russell*, Martinelli's admitted that all of the Sparkling Juice Products stated "100% Juice" on the front labeling. *See supra* Section II(A) (citing Martinelli's admissions); *see also Fitzhenry-Russell*, 326 F.R.D. at 613 (the "material alleged misrepresentations were made here to the entire class…."). "Therefore, the standard requires only that the Court find there is a probability that reasonable consumers could be misled, not that they all believed ['100% Juice'] means the same thing." *Id.* Admissions in Martinelli's marketing research cited in Section II(C) above furnish sufficient classwide evidence of materiality and consumer deception. *See, e.g., Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018) (citing defendant's admissions as a factor supporting predominance requirement); *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (defendants' own marketing research and surveys furnished classwide evidence supporting predominance requirement). So too does the admission by Martinelli's President and CEO that "[w]hat really sets us apart is that Martinelli's products are 100% juice, made … with NO added sweeteners or preservatives." Ex. 1 at 5 (capitalization in original).

Finally, apart from Martinelli's admissions, Dr. Dennis' work furnishes separate and independent classwide evidence sufficient to establish materiality and deception. *See*, *e.g.* *Broomfield*, 2018 WL 4952519 at *11. And while Martinelli's will probably challenge his analysis, such objections relate to the merits of the claims and not to class certification. *See Corbett v. PharmaCare U.S., Inc.*, 2024 WL 1356220 at *22 (S.D. Cal. Mar. 29, 2024) ("Defendant's criticism[s], whether they will eventually carry the day or not to a fact finder, is not sufficient to convince the Court that evidence of consumer deception from a reasonable consumer standpoint cannot be proved or disproved on a class-wide basis through a well-designed survey."); *cf. Wendt v.*

*Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (as a general matter, "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility.").

**b. Common Law Fraud**

The Ninth Circuit holds that "[f]raud claims are … particularly well suited to class treatment under Rule 23(b)(3)," so long as the claims "involve similar misrepresentations" made to all class members. *DZ Reserve*, 96 F.4th at 1234; *see also In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) ("This court has followed an approach that favors class treatment of fraud claims stemming from a common course of conduct") (internal quotation omitted). In that circumstance, "reliance may be presumed if the defendant's misrepresentations or omissions were material." *Fitzhenry-Russell*, 326 F.R.D. at 613 (certifying common law fraud claims) (internal quotation omitted); *see also Joint Equity Comm. of Inv'rs. of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 429-34 (C.D. Cal. Mar. 26, 2012) (certifying class where sales brochures were "sufficiently similar to justify an inference of class-wide reliance").

The Second Circuit applies the same rules to fraud claims under New York law. "Fraud actions must ... be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002). "The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof." *Id.* This rule applies in cases like this one involving uniform false statements on product labeling. *See*, *e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (following *Moore* when holding fraud claims based on "100% Pure Olive Oil" were certifiable); *Maroney v. Woodstream Corp.*, 2025 WL 945874 at *12 (Mar. 28, 2025) (following *Moore* and certifying fraud claims based on a "uniform misrepresentation" on product packaging). Hence, for the reasons already stated above, these standards support certification of the fraud claims under both New York and California law.

### 2. Damages Are Capable Of Measurement On A Classwide Basis

At class certification, "[p]laintiffs need only show that [class] damages can be determined without excessive difficulty and attributed to their theory of liability." *Just Film*, 847 F.3d at 1121. It is not necessary to calculate the *amount* of classwide damages at the class certification stage; instead, it is sufficient to show that "damages *could* be calculated on a classwide basis, even where such calculations have not yet been performed" *See Lytle*, 114 F.4th at 1024-25 (emphasis in original); *see also Noohi*, 146 F.4th at 863-64 (following *Lytle*). This requirement is easily satisfied here for two reasons.

First, Plaintiff Ramirez seeks restitution under California's UCL and FAL, as well as damages under the CLRA, and both Plaintiffs seek damages for fraud. Plaintiff's experts have developed a methodology to show that everyone in the class paid a premium for Martinelli's Sparkling Juice Products that would not have existed in the absence of the labeling misrepresentations. *See*, *e.g.*, *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988-89 (9th Cir. 2015) (affirming that such a methodology satisfies *Comcast*, explaining that the damages calculation "under the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information"); *Drake*, 2026 WL 1079027, at *2 (affirming that price premium methodology establishes damages common to all class members in false labeling case). Moreover, Plaintiffs need not account for the relationship between the price each class member paid and the "value" that he or she may have received. *See id*. at 989 (damages model "need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase").

To measure the price premium that resulted from the false "100% Juice" claims, Plaintiffs' experts used the same method this Court approved in *Fitzhenry-Russel*: conjoint analysis. *See* Ex. 21, Dennis Decl., ¶¶ 33, 106-178; Ex. 52, Weir Decl., ¶¶ 23-61; *see also Fitzhenry-Russell*, 326 F.R.D. at 600-606 (granting class certification and denying motion to exclude opinions of the same experts in this case offering similar price premium model of damages). Conjoint analysis, by its nature, does not turn on the idiosyncrasies of any individual purchaser's transaction. Instead, it looks

at market-wide data to determine how the market would determine damages. As a result, variations in purchase price and individual purchasing behavior do not alter the calculation of total, class-wide damages. *See* Ex. 52, Weir Decl., ¶¶ 27, 34. It is a standard approach for calculating damages in false advertising cases, and has been approved by the Ninth Circuit. *See*, *e.g.*, *Lytle*, 114 F.4th at 1026 ("…the very structure of the conjoint survey allows for an overcharge to be associated with each individual statement and label, allowing the amount each class member is entitled to recover to be easily assessed based solely on the product the class member purchased."); *Corbett*, 2024 WL 1356220 at *27 ("choice-based conjoint surveys have routinely been found by courts to be accepted methodology to measure the difference in price that may arise from alleged misrepresentations made about products"); *accord*, *e.g.*, *Gershzon v. Colgate-Palmolive Co.*, 2026 WL 1916431 at 49-53, 59 (N.D. Cal. Apr. 13, 2026); *In re: Lenovo Adware Litig*., 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016).

Dr. Dennis designed the conjoint survey here in consultation with Mr. Weir. Ex. 21, Dennis Decl., ¶ 155; Ex. 52, Weir Decl., ¶¶ 35-36. It took into account the real-world marketplace for sparkling juices and ciders, and was based on actual, historical prices that occurred in the marketplace. Ex. 21, Dennis Decl., ¶ 142; Ex. 52, Weir Decl., ¶¶ 49-50. Dr. Dennis also used actual competitor brands, actual claims on those competitors' labels, and actual price ranges for those competitors' products. *See* Ex. 21, Dennis Decl., ¶ 129-132, 134-144. Following standard techniques for conjoint surveys, respondents were shown a variety of sparkling juice products that varied according to the product attributes tested: brand, product claims, and price. *See id* ¶ 132. Respondents chose their preferred product based on the displayed attributes. *Id*. Respondents also had the option to select "none of these" as the preferred product. *Id.* ¶¶ 143, 145. Dr. Dennis was then able to take the preference data and feed it into a market simulator to calculate the price premium that consumers paid as a result of the "100% Juice" label. *See id*. ¶¶ 150-159. The conjoint analysis shows that the representation commanded a 7.29% market price premium. *Id*. ¶¶ 33, 161.

Second, for Plaintiff Sanchez and the proposed New York Class, a successful plaintiff can recover statutory damages, in the amount of fifty dollars for violations of GBL § 349 and five hundred dollars for violations of GBL § 350. *See* N.Y. Gen. Bus. Law §§ 349(h), 350-e(3); *see also*

*Montera v. Premier Nutrition Corp*., 111 F.4th 1018, 1039-40 (9th Cir. 2024) (discussing calculation of NY GBL statutory damages in false advertising class action). Given the limited value of the products, "most, if not all, class members will choose statutory damages, and statutory damages 'can be assessed on the basis of common proof.'" *Sharpe v. A&W Concentrate Co.*, 2021 WL 3721392, at *7 (E.D.N.Y. July 23, 2021) (citing *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015) ("It is not disputed that statutory damages under GBL § 349 can be assessed on the basis of common proof, as they are capped at $50.")). Hence, statutory damages under §§ 349 and 350 generally pose no obstacle to predominance. *See*, *e.g.*, *id.*; *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 161 (S.D.N.Y. Feb. 27, 2017) ("to the extent the (b)(3) class seeks statutory damages under GBL § 349, they can be assessed on the basis of common proof, as they are capped at $50") (internal quotation omitted); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857 at *16 (C.D. Cal. July 1, 2013) (holding statutory damages supported predominance requirement even without supporting expert testimony).

**3. The Superiority Requirement Is Satisfied**

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Fitzhenry-Russell*, 326 F.R.D. at 616 (internal quotation omitted). "Making this determination involves a comparative analysis of alternatives and consideration of the nonexhaustive factors enumerated in Rule 23(b)." *Id*. Those factors are: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

"Here, no class members have any significant interest in pursuing individual litigation," there is no "already-commenced litigation concerning the controversy, economies of scale make it desirable to concentrate the claims of these … class members in this … forum," and there are "no likely difficulties in managing this case as a class action." *Lilly v. Jamba Juice Co*., 308 F.R.D. 231, 241 (N.D. Cal. 2014). Also, "the individual monetary relief in this case is likely not substantial

enough that the putative class-members will pursue it individually." *Amavizca v. Nutra Mftg., LLC*, 2021 WL 682113, at *12 (C.D. Cal. Jan 27, 2021). Plus, "common issues of law and fact are likely to predominate over individual issues," so "questions of efficiency weigh in favor of class certification." *Id*. Further, Martinelli's is headquartered in this District, making this a desirable forum. Superiority is satisfied here.

**IV. Conclusion**

For the foregoing reasons, the Court should grant class certification. If the Court determines that any issue precludes certification, Plaintiff asks the Court to deny Plaintiffs' motion without prejudice. *See*, *e.g.*, *In re Wells Fargo Cash Sweep Litig.*, 2026 WL 1846560 at *6 (N.D. Cal. June 26, 2026) (granting leave to file renewed motion for certification after denial); *In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*, 826 F.Supp.3d 1217, 1238 (N.D. Cal. Mar. 30, 2026) (denying motion for class certification without prejudice).

Dated: September 8, 2026

**SMITH KRIVOSHEY, PC**

By: *<u>/s/ Joel D. Smith</u>*
Joel D. Smith

Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
28 Geary Street Suite 650 #1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com
brittany@skclassactions.com

*Attorneys for Plaintiffs*