# Exhibit K

DLA PIPER

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Keara M. Gordon
keara.gordon@dlapiper.com
T 212.335.4632
F 212.884.8632

October 16, 2026

*Via E-Mail*

Yeremey O. Krivoshey
SMITH KRIVOSHEY, PC
28 Geary Street Suite 650 # 1507
San Francisco, CA 94108
yeremey@skclasactions.com

Joel D. Smith
SMITH KRIVOSHEY, PC
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
joel@skclassactions.com

**Re: *Ramirez et al. v. S. Martinelli & Company* (Case No. 5:25-cv-07569)**
**<u>Deficiencies in Plaintiffs' Amended Discovery Responses</u>**

Dear Counsel:

We write regarding the plaintiffs' significant and ongoing discovery deficiencies.

On July 9, 2026, defendant S. Martinelli & Company ("Martinelli's") sent the plaintiffs a detailed deficiency letter identifying numerous shortcomings in their responses to Martinelli's First Set of Interrogatories and Requests for Production. In that letter, Martinelli's requested that the plaintiffs supplement their deficient interrogatory responses and produce all responsive, non-privileged documents in advance of their scheduled depositions on August 19, 2026 and August 27, 2026.

Following the parties' July 19 meet-and-confer, Martinelli's sent a second letter addressing the discovery deficiencies that the plaintiffs had failed to cure. *See* July 21, 2026 Letter from Keara Gordon to Plaintiffs' Counsel. Despite the plaintiffs' continued noncompliance, Martinelli's acted cooperatively and, in an effort to facilitate progress, offered to narrow a subset of its discovery requests.

Although the plaintiffs served supplemental discovery responses on July 31, 2026, their discovery remained materially deficient, requiring Martinelli's to again follow up. *See* August 15,

2026 e-mail from Tia Nguyen to Plaintiffs' Counsel. In that correspondence, Martinelli's noted that Ms. Ramirez had produced only a single document and that Ms. Sanchez had produced only a small volume of materials consisting primarily of photographs, unspecified Cash App histories, and a solicitation form. Despite repeated efforts by Martinelli's to obtain complete discovery responses and responsive documents, the plaintiffs did not provide complete discovery responses prior to their depositions.

That fact became clear during the plaintiffs' depositions. (Ramirez Resps. to Interrog. Nos. 1 and 11 (Ramirez, 67:11–68:14; 188:11–16; 189:24–190:1); Ramirez Resps. to Interrog. Nos. 5 and 6 (Ramirez, 147:18–148:7; 151:1–155:21; 90:5–10; 91:16–21); Ramirez Resps. to Interrog. No. 16 and RFP Nos. 88, 89, and 91 (Ramirez, 217:15–218:9; 218:18–219:11; 15:16–18; 206:21–208:19; 229:18–230:3; 231:19–22; 207:20–208:25; 225:9–227:8); Ramirez Resp. to RFP No. 82 (Ramirez, 124:2–8; 242:8–243:9); Sanchez Resps. to RFP Nos. 5, 7, 8, and 14 (Sanchez, 105:4–16; 106:10–13; 106:23–107:3; 104:3–11; 284:21–285:14; 131:19–22; 137:6–9; 143:1–5; 146:2–4); Sanchez Resps. to Interrog. No. 16 and RFP No. 78 (Sanchez, 235:5–13; 260:7–25; 261:3–263:12); Sanchez Resp. to RFP No. 71 (Sanchez, 267:11–19; 268:4–12; 269:13–24).

On September 10, 2026 and September 22, 2026, Martinelli's was forced to follow up yet again.

Finally, on September 30, 2026, the plaintiffs provided (1) Ms. Ramirez's Amended Responses and Objections to Interrogatory Nos. 1, 6, 11, and 16 and RFP Nos. 88, 91, (2) Ms. Sanchez's Supplemental Objections and Responses to Interrogatory No. 16, and (3) Ms. Sanchez's supplemental production (SANCHEZ_00041–61). Unfortunately, these third amended discovery responses and the plaintiffs' supplemental document production fail to remedy the plaintiffs' discovery deficiencies and raise serious concerns regarding the adequacy of Ms. Ramirez and Ms. Sanchez to act as class representatives.

## I. Ms. Ramirez's Discovery Responses Remain Deficient.

### A. Interrogatory Nos. 1 & 11 – *Individuals with knowledge of the allegations in the Amended Complaint*

Interrogatory No. 1 requests that Ms. Ramirez "[i]dentify all Persons who have knowledge of facts relevant to the allegations in the Amended Complaint and Identify the issues on which You believe they have knowledge." In response, Ms. Ramirez identified only herself, and certain Martinelli's individuals (who she testified she did not know). Ramirez, 188:4–10. Interrogatory No. 11 similarly requests identification of "all Persons with whom You have Communicated concerning this Action or the allegations of your Amended Complaint." There, the only individuals Ms. Ramirez identified are her "lawyers."

At deposition, however, Ms. Ramirez testified that she learned about Vitamin C in Martinelli's products in 2025 after reviewing the solicitation from Smith Krivoshey, PC (Ramirez

Dep. Ex. 4; produced as RAMIREZ_00001–2) and then asking "one of [her] kids [to] go get [the product]" at Food 4 Less so that she could review the full label and ingredients. Ramirez, 60:15–61:4; 62:4 11; 67:14–68:1. She further testified that "one of the kids" (likely Jolene) Googled ascorbic acid at the store when viewing the bottle. *Id.* at 62:12–18; 64:20–24; 68:2–7. Although Ms. Ramirez's daughter is a key witness, Ms. Ramirez did not identify her in response to Interrogatory No. 1. When asked why she omitted this information, Ms. Ramirez stated it was "[b]ecause she [was] a minor at the time," which contradicts her prior testimony that her children were adults in 2025. *Id.* at 68:10–14; 188:11–16. Further, despite the fact that Ms. Ramirez initially specifically testified that she thought it was Jolene who Googled the products, Ms. Ramirez later changed her testimony, claiming that she did not investigate which of her children was at the grocery store. *Id.* at 189:24–190:1.

In its September 10, 2016 letter, Martinelli's explained that Ms. Ramirez's testimony makes clear that her responses to Interrogatory Nos. 1 and 11 are selective and incomplete and Martinelli's requested that Ms. Ramirez supplement her response to Interrogatory No. 1 by identifying *all* individuals with knowledge of the facts alleged in the Amended Complaint.

In response, for Interrogatory No. 1, Ms. Ramirez's September 30, 2026 supplemental response ("Supplemental Response") identified only the plaintiffs' experts, J. Michael Dennis and Colin Weir. That response remains deficient, as neither of the plaintiffs' experts has any first-hand knowledge of any of the underlying facts of this case, other than what the plaintiffs or their counsel chose to share with them.

More importantly, the answer to Interrogatory No. 1 still fails to identify the individuals who were present with Ms. Ramirez at Food 4 Less when she supposedly confirmed the validity of her lawyers' solicitation claiming that the label was misleading (which caused her to file this suit), Ramirez, 60:19–68:19. This information is highly relevant to the issues in this litigation. *Jones v. Walinga*, No. 1:19-cv-396-DAD-HBK, 2021 WL 2474500, at *1–2 (E.D. Cal. June 17, 2021) (granting motion to compel responses to interrogatories requesting party to identify all witnesses who support the plaintiffs' contentions); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 340–41 (N.D. Cal. 1985) (court ordered plaintiffs to identify witnesses requested in the interrogatories noting that there is "no reason plaintiffs should not identify. . . any witnesses whom plaintiffs know have information that supports or contracts any of the controverted allegations in plaintiffs Consolidated Amended Complaint"). Indeed, Ms. Ramirez should have identified these individuals in her initial disclosures, and she should have affirmatively supplemented her discovery responses after her deposition testimony, without prodding by Martinelli's.

Ms. Ramirez's Supplemental Response to Interrogatory No. 11 at least now acknowledges that "Plaintiff may have discussed the contents of the labeling of the products with one of her daughters." But that statement—again verified under oath under penalty of perjury—is still suspect as it contradicts Ms. Ramirez's testimony that "one of the kids are reading things to [her]"

after she asked him or her to go back to get the sparkling cider so she could see what it "say[s] on the back." Ramirez, 67:14–25.

Moreover, in her Supplemental Response to Interrogatory No. 11, Ms. Ramirez tries to avoid naming persons with knowledge by asserting she "does not recall which daughter" she "discussed the contents of the labeling of the products with." This latest non-answer fails to comply with Ms. Ramirez's discovery obligations, as she "ha[s] a responsibility to make a reasonable inquiry into the matter and furnish information that is available to [her]." *Apothio, LLC v. Youngblood*, 2025 WL 2192378, at *5 (E.D. Cal. Aug. 1, 2025) (citation omitted) (finding that party's "response that he does not remember 'each and every person' is nonresponsive and insufficient"); *see also Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 466–67 (D. Ariz. 2020) (finding that plaintiff's "incomplete interrogatory responses are" a "basis for sanctions" because she failed "to identify all the individuals she had spoken to about the relevant events").

Please explain what efforts, if any, Ms. Ramirez took to satisfy her discovery obligations. Did she talk to her daughters to see who was with her? Did she do anything at all to help resolve the question? If she did nothing, please so state.

Please promptly supplement Ms. Ramirez's response by October 20, 2026.

**B. Interrogatory Nos. 5 & 6 – *Other vitamin products***

Interrogatory No. 5 asks Ms. Ramirez to "[i]dentify any product containing with [sic] Vitamin C (also known as ascorbic acid) purchased by You or on Your behalf since September 5, 2020 including the product name(s), price paid, manufacturer(s), and date(s) of purchase." Ms. Ramirez did not provide any substantive response to Interrogatory No. 5. Along similar lines, Interrogatory No. 6 requests identification of "any vitamin supplement products fortified purchased by You or on Your behalf since September 5, 2020 including the product name(s), price paid, manufacturer(s), and date(s) of purchase." In response, Ms. Ramirez stated she "is unaware of any responsive vitamin supplement products."

At deposition, however, Ms. Ramirez testified to the contrary. She testified extensively about the numerous supplement products she takes that contain vitamins, including "Cayenne Pepper Hawthorn Beet Root Turmeric Vitamin K2+D3" (containing Vitamins K and D) and black seed and honey gummies (containing Vitamin C). *See* Ramirez, 147:18–148:7; 151:1–155:21. Ms. Ramirez also testified that she has purchased Tampico punch, *id.* at 90:5–10, which contains Vitamin C. *See* https://tampico.com/products/tropical-punch/. And Ms. Ramirez testified that she purchased Monster products, which contain B Vitamins. *See* Ramirez, 91:16–21; https://www.monsterenergy.com/en-us/energy-drink-info/.

As such, Martinelli's pointed out in its September 10 letter that it was apparent that Ms. Ramirez did little to no investigation or contemplation when responding to these discovery requests. It thus asked Ms. Ramirez to supplement her responses to Interrogatory Nos. 5 and 6 to

reflect these products and any others she purchased that contain Vitamin C or other vitamin supplements.

In response, Ms. Ramirez did not supplement her response to Interrogatory No. 5 in any way. Even though her deposition testimony conclusively demonstrates that Ms. Ramirez's sworn verification to her June 24, 2026 interrogatory responses was inaccurate, Ms. Ramirez chose not to amend those responses and instead, provided a new sworn verification claiming that the prior answer was true.

With respect to Interrogatory No. 6, Ms. Ramirez merely added that she is unaware of any supplements "[o]utside of any supplements discussed in [her] deposition."

These supplemented responses, at best, do not reflect any meaningful additional investigation or demonstrate that Ms. Ramirez took even a modicum of effort to provide the complete information requested. Please supplement the responses to Interrogatory Nos. 5 and 6 to provide full and complete responses by October 20, 2026.

**C. Interrogatory No. 16 and RFP Nos. 88, 89, and 91–** ***Other legal proceedings***

Interrogatory No. 16 asks Ms. Ramirez to "[i]dentify each and every legal proceeding (including appraisal proceedings, other administrative proceedings, arbitrations, investigations, civil or criminal lawsuits) in which You have been involved in any manner. For each, Identify the proceeding by case name, caption, and jurisdiction." RFP Nos. 88, 89, and 91 request documents and communications relating to any prior convictions, legal proceedings, litigations, complaints, or demand letters.

In response to Interrogatory No. 16, Ms. Ramirez initially disclosed "occasional traffic infractions" and that she "consulted with a lawyer to pursue claims against the responsible parties in traffic accidents." On July 10, 2026, she amended her response to also disclose "various criminal proceedings between roughly 1989, when she was fifteen years old, and 2004, including a 13-month prison sentence ending in 2004." Ms. Ramirez represented that those "records have been expunged" so she "does not have the requested case-identifying information." She verified this and her prior response under penalty of perjury. RFP Nos. 88, 89, and 91 request documents and communications relating to any prior convictions, legal proceedings, litigations, complaints, or demand letters. Ms. Ramirez did not produce any documents in response to these RFPs.

Ms. Ramirez's deposition testimony revealed that her response to Interrogatory No. 16 is inaccurate and her document productions are deficient in numerous ways despite the fact that she twice verified her responses. Ramirez, 217:15–218:9; 218:18–219:11; 15:16–18; 206:21–208:24; 225:9227:8; 229:18–230:3; 231:19–23; 207:20–208:25. In its September 10 letter, Martinelli's thus requested that Ms. Ramirez supplement her interrogatory responses and document productions to reflect the information relating to all of the legal proceedings about which Ms. Ramirez testified during her deposition, and any other proceedings not previously disclosed.

She acknowledged multiple criminal proceedings, child guardianship proceedings in probate court for "both babies," and two divorces, all of which were not disclosed until the deposition. *Id.* at 206:21–207:1, 208:7–8, 217:3–6. She explained that she "didn't know [she] was supposed to" and that she "was thinking of [her]self in front of a judge." *Id.* at 207:2–4; 208:9–12.

She then admitted that she had been involved in a proceeding against Monster Energy, which was also not disclosed until the deposition. *Id.* at 225:9–13. At first, she confirmed she was a "named plaintiff," but she later said she was not. *Id.* at 225:18–19, 227:7–10. She also said she was unaware that Monster had sued her in Orange County Superior Court. *Id.* at 227:11–228:10. Even so, she testified that her Monster claim "paid out" and that she received a settlement of roughly "4-, $500." *Id.* at 229:5–13; 229:24–25; 233:5–13. This contradicts her earlier testimony that she had never settled a legal proceeding that resulted in money. *Id.* at 131:17–19.

Ms. Ramirez further testified that attorney Josh Swigart "is my attorney." *Id.* at 230:22–25. Through him, she pursued claims against "a lot of people," apparently based on a "reverse search" of the companies that bought her Facebook data, but yet again, she did not reveal this information until the deposition. *Id.* at 231:7–232:1; 237:19–24. In fact, she has received "[m]ore than three" settlements through Mr. Swigart, including from Edison and Bed Bath & Beyond. *Id.* at 234:5–9; 238:14–239:3. She "[p]robably" has received more than $5,000 in total. *Id.* at 235:7–14. Those matters began in about 2023 or 2024 and are still "ongoing." *Id.* at 234:18–22, 239:5–6; 240:2–5. She then agreed that her discovery responses were not "full and complete and truthful" because she left this information out. *Id.* at 240:19–241:4.

Ms. Ramirez's supplemental discovery responses remain deficient. For example, in its September 10 letter, Martinelli's explained that, contrary to her representation that she did not have access to her criminal record information, Ms. Ramirez testified that she "contacted [her] parole agent" who provided her with "a parole certificate," which she provided to her counsel. *See id.* at 217:15–218:9. Martinelli's also pointed out that counsel has not produced this document and it requested that counsel produce it immediately with an explanation as to why it was not produced before Ms. Ramirez's deposition. Amazingly, Ms. Ramirez and counsel still have not produced the parole certificate or provided any explanation why not.

Martinelli's September 10 letter also pointed out that Ms. Ramirez stated that, after going to the "parole department," she conducted her own search for records, the results of which she also provided to counsel. *Id.* at 218:18–219:11. Because the plaintiffs' counsel had not produced any of these records either, Martinelli's asked that Ms. Ramirez produce them immediately and that counsel explain why they were not produced before Ms. Ramirez's deposition.

Again, Ms. Ramirez and counsel have not responded. Martinelli's reiterates its request that Ms. Ramirez produce the missing information and that her counsel explain their continuing production failures.

She additionally refuses, on relevance grounds, to identify the claims she "resolved . . . through the Swigart law firm," and claims she was unaware of the *Monster Energy* action. This position yet again contradicts her deposition testimony. At deposition, Ms. Ramirez testified that Mr. Swigart "filed demands on [her] behalf." *Id.* at 236:19–22. She testified that she has received "[m]ore than three" settlements through him, including from Edison and Bed Bath & Beyond. *Id.* at 233:5–234:9; 237:11–239:3. She also testified that these matters are "still going" and "ongoing." *Id.* at 234:20–22; 239:5–6; 240:2–5. Regarding Monster, at deposition, she testified that she was "involved in a legal proceeding with Monster." *Id.* at 225:9–13. She testified that her Monster claim "paid out." *Id.* at 229:11–13. And when asked, "Did you get a settlement?" she answered, "I did." *Id.* at 229:24–25. That testimony contradicts her supplemental answer that she was just made aware of the *Monster Energy* action at the deposition.

It is improper to withhold responsive, non-privileged materials as named plaintiffs in a class action have an obligation in discovery to provide information about their litigation background and attorneys must produce all non-privileged documents provided to them by their client in response to discovery requests. *See, e.g., Baird v. BlackRock Institutional Tr. Co., N.A.*, 322 F. Supp. 3d 966, 975–76 (N.D. Cal. 2018) (the court required plaintiffs to produce "three non-privileged documents that are 'arguably responsive' to Defendants' Requests" regardless of whether plaintiffs think they are relevant); *1ST Tech., LLC v. Rational Enters. Ltda.*, No. 2:06–cv–01110–RLH–GWF, 2008 WL 4571258 at *6 (D. Nev. July 15, 2008) ("[A]n attorney does not have a general legal right to withhold relevant documents belonging to his client which are not otherwise privileged."); *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 552 (W.D. Wash. 2004) (court finding sanctions appropriate where the law firm improperly withheld documents, noting the withholding of the documents "was in bad faith and [was] a blatant abuse of the discovery process").

As such, please produce immediately:

(1) the parole certificate and records search that Ms. Ramirez testified on August 19, 2026 that she previously provided to counsel, Ramirez, 217:15–218:9; 218:18–219:11; and

(2) supplemental interrogatory answers and documents that identify the claims or disputes were resolved through Swigart Law Group APC, which is information within her possession, custody, or control; and

(3) documents and information regarding Ms. Ramirez's involvement in *Monster Energy Co. v. Aguirre*, No. 30-2024-01404669-CU-MC-NJC (Super. Ct. Cal., Orange Cnty.).

Ms. Ramirez's unilateral view of relevance does not excuse her obligation to identify "each and every legal proceeding . . . in which [she has] been involved in any manner," and her shifting explanations raise serious concerns about her adequacy as a class representative. *See Pena v.*

*Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 215 (E.D. Cal. 2015) ("A class representative's credibility and honesty may also be relevant to his or her adequacy").

**D. RFP No. 82 – *Employment history***

RFP No. 82 requests the production of Ms. Ramirez's "resume or curriculum vitae and/or other Documents relating to summaries of Your education and/or employment history." Ms. Ramirez agreed to produce her "current resume or curriculum vitae, to the extent one exists and can be located on a reasonable search of Plaintiff's records" but represented that she "is unaware of any responsive, non-privileged documents that are being withheld."

At deposition, Martinelli's uncovered that Ms. Ramirez does have a resume, which she did not produce because she "didn't know" that Martinelli's had requested it. Ramirez, 124:2–8. This testimony is concerning for a number of reasons, including that Ms. Ramirez represented in her discovery response that no responsive documents existed. Only after being asked about her resume during deposition did Ms. Ramirez then produce one. But the version she produced—halfway through her deposition—is "not updated" and "old" and that she believes she has a more current version. *See id.* 242:8–12; 242:24; 243:8–11.

In its September 10, 2026 letter, Martinelli's asked you to produce the most current version of Ms. Ramirez's resume and any other documents responsive to RFP No. 82, and to explain why Ms. Ramirez did not provide these documents previously and falsely represented that no such documents existed.

Ms. Ramirez and counsel did not address RFP No. 82 in their September 30, 2026 amended responses, and she still has not produced her current resume.

Please immediately produce Ms. Ramirez's most current resume and any other documents responsive to RFP No. 82 and explain why they have not previously been produced.

**II. Ms. Sanchez's Deficient Discovery Responses**

**A. RFP. No. 78 – Other legal proceedings**

RFP No. 78 requests "[a]ll Documents and Communications relating to any litigation in which You have been named as a plaintiff or as a member of a putative class in the last ten years."

Ms. Sanchez has still failed to produce documents responsive to RFP No. 78. She testified in her deposition that she was involved in litigation over the T-Mobile data breach and against Google. Sanchez, 15:14–20; 235:5–236:25; 260:7–25; 260:25–263:12; 270:3–11. While Ms. Sanchez's September 30, 2026 supplemental responses now disclose her involvement in the T-Mobile data breach and the Google matter, her document production remains deficient because she has failed to produce any documents related to those actions.

Please supplement Ms. Sanchez's response to RFP No. 78 to produce documents related to each and every legal proceeding in which she has been involved, whether as a plaintiff, defendant, class member, or otherwise.

**B. RFP Nos. 5, 7, and 8 and Interrogatory No. 14**

RFP No. 5 requests the production of "[a]ll Documents and Communications relating to or evidencing any purchase(s) of the Product(s) by You or on Your behalf at any time." RFP Nos. 7 and 8 seek the same for other Martinelli's products and for other products labeled "100% Juice." Similarly, RFP No. 14 requests "[p]hotographs of any of the Products(s) You purchased."

**a. *Production of physical Martinelli's and other "100% juice" products in her possession for inspection***

At her deposition, Ms. Sanchez testified that she has an extensive bottle collection, which includes Martinelli's products, and specifically, the products for which she produced photos. *See* Sanchez, 105:4–16; 106:10–13; 106:23–107:3. These bottles are plainly relevant and should have been identified. As requested in Martinelli's September 10, 2026 letter, please produce for inspection all physical bottles or cartons of Martinelli's products in Ms. Sanchez's possession, and any other bottles or cartons in Ms. Sanchez's possession which contain the statement "100% Juice" on the label.

**b. *Metadata of photos taken***

As Martinelli's noted at Ms. Sanchez's deposition and in its September 10, 2026 letter, the photographs Ms. Sanchez originally produced had no metadata, including the dates they were taken. At her deposition, Ms. Sanchez could not remember when the photos were taken and contradicted herself about some of them. *See, e.g.*, Sanchez, 104:3–11; 284:21–285:14.

Ms. Sanchez has since provided metadata for some, but not all of the photographs. She has not provided metadata for SANCHEZ_00007–8 and SANCHEZ_00014–15. The metadata she did provide for SANCHEZ_00018–20 shows only when those images were downloaded, not when the original photographs were taken. Please provide metadata showing the date each produced photograph was taken by October 20, 2026.

Ms. Sanchez also provided additional pictures for the first time in her September 30, 2026 supplemental responses. *See* SANCHEZ_00051–SANCHEZ_00060. These pictures should have been produced in Ms. Sanchez's initial production on June 29, 2026.

Please explain why these photos were produced for the first time on September 30, 2026 and confirm that there are no additional responsive photos on Ms. Sanchez's phone.

**C. RFP No. 71 – *Employment history***

RFP No. 71 requests the production of Ms. Sanchez's "resume or curriculum vitae and/or other Documents relating to summaries of Your education and/or employment history." While Ms. Sanchez provided a resume, SANCHEZ_00038–39, that document, however, did not disclose Ms. Sanchez's work with Instacart or Uber, which she testified she performed "[d]uring COVID." *See* Sanchez, 267:11–19. Exhibits 48 and 49 marked at the deposition indicate, however, that Ms. Sanchez may have worked for these companies as recently as of 2024 or 2025, when she testified that she has not worked since 2023. *Id.* at 20:16–21:3.

Because of the unique nature of a named plaintiff, Martinelli's is entitled to probe Ms. Sanchez's credibility. *See, e.g., Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) ("[T]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry 'because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'" (citations omitted)). If there are documents in Ms. Sanchez's possession, custody, or control that demonstrate any affiliation between her and Instacart or Uber in 2024, 2025, or 2026, please provide them.

Please provide dates next week when you are available to discuss these deficiencies so that we may further attempt to resolve these issues without the need for court intervention. This letter is not intended to be inclusive of all deficiencies in the plaintiffs' discovery responses, and Martinelli's expressly reserves all rights, including the right to raise any other deficiencies.

Sincerely,

*/s/ Keara M. Gordon*

Keara M. Gordon